WESTERN DIS.
October, 1841.

LECOMTE
vs.
SMART.

## LECOMTE vs. SMART.

APPEAL FROM THE COURT OF THE SIXTH, NOW TENTH DISTRICT, FOR THE PARISH OF NATCHITOCHES, THE JUDGE OF THE SEVENTH PRESIDING.

The southern and south-west boundary of the county and parish of Natchitoches runs from the junction of the Rigolet de Bon Dieu and Red River, in a direction as far south of west as will strike the Sabine River at the point where the north-west corner of the county of Opelousas touches the western bank of that stream.

In settling and determining boundaries not fixed by actual observation and survey, some weight must be given to general understanding and common acquiescence.

Title papers are admissible in evidence in a possessory action, to show the extent and limits of the plaintiff's possession; although no inquiry can be had as to the validity of titles in this action.

Where a person takes possession of land under an apparent title as his own, slight acts will be received as evidence of an intention to take actual possession.

But where a man without any pretence of title, goes upon land claimed by another, he must show unequivocal acts of possession, more *than a year*, to maintain the plea of prescription.

This is a possessory action, instituted in April, 1838, and citation was served on the defendant the 10th May following. The plaintiff alleges he is the owner of two square leagues of land situated in the parish of Natchitoches, and embracing the small Prairie of Lannacoco with the adjacent wood-land; that the defendant within a year ago, took possession, without any shadow or pretence of title, of a part of said land, and is cutting timber, cultivating and committing trespass and waste thereon, to his great damage. He prays that the defendant be condemned to leave the premises and pay damages.

WESTERN DIS. October, 1841.

LECOMTE vs. SMART.

The defendant excepted to the jurisdiction; averring he resided in the Parish of Rapides. This exception was overruled. The general issue and prescription of one year was pleaded.

On the evidence produced, the District Judge was of opinion the defendant was a possessor in bad faith, without any pretence of title, and that the plea of prescription was unavailable. There was judgment for the plaintiff quieting him in his possession of the premises, and the defendant appealed.

*Morse & Roysden*, for the plaintiff.

*Ogden & Brent*, for defendant.

*Garland, J.* delivered the opinion of the court.

This action is instituted to recover the possession of a small tract of land which it is alleged the defendant has entered upon illegally, being a portion of a larger tract, which the plaintiff claims to possess as owner, situated in the Parish of Natchitoches, at a place called the Lannacoco Prairie.

The defendant excepts to the jurisdiction of the court, alleging he resides in the Parish of Rapides, where he should have been sued. This exception was overruled, after hearing testimony, the defendant filed a general denial, and pleaded the prescription of one year to the action. There was judgment against him, and he appealed.

The first question to be considered is, as to the jurisdiction

WESTERN DIS. of the court, which involves the question of boundary between
October, 1841. the Parishes of Rapides and Natchitoches. The line between
LECOMTE the Parishes in this quarter has never been surveyed and
*vs.* marked; we are therefore left to form our opinions as to
SMART. where it is intended to be, from the acts of the Legislature and
the evidence in the record. The act of March 16, 1809, 1
Bullard & Curry's Dig. 173, says, "the line dividing the
County and Parish of Natchitoches from the County and
Parish of Rapides shall intersect the Red River at the con-
fluence of the Rigolet de Bon Dieu, and shall run from thence
*on the west in a direct line* to the nearest corner of the County
of Opelousas, &c." The French text is, "se prolongera de là
vers l'ouest en ligne directe jusqu'à la première limite des
Opelousas, &c." The difference in the meaning of the two
texts creates some confusion. If, according to a portion of the
English text, the line was to run directly west from the Rigolet
de Bon Dieu, it is evident it could not be made to touch any
portion of the County of Opelousas, as the line of that Parish
is now understood. If, according to a part of the French text
the line is to run directly to the nearest line (première limite,)
of the County of Opelousas, its bearing would be nearly due
south, and it would not go to any corner of that County, but
intersect the supposed line at a place distant from any corner.

The southern and south-west boundary of the county and parish of Natchitoches runs from the junction of the Rigolet de Bon Dieu and Red River, in a direction as far south of west as will strike the Sabine River, at the point where the north-west corner of the county of Opelousas touches the western bank of that stream. According to the first hypothesis, the *locus in quo* would be in the County of Rapides or Opelousas, according to the last, certainly in Natchitoches; but we do not think either supposi-tion exactly correct. To ascertain the meaning of the Legis-lature, we have to take a portion of both texts, and we think the real intention is, the line shall commence at the junction of the Red River and the Rigolet de Bon Dieu, and run in a direction as far west of south as necessary to strike the Sabine River, at the point where the north-west corner of the County of Opelousas touches the western bank of that stream. Where that point is to be found, is not certainly known, and we are left very much to common report, and such maps of the State as are in our reach to fix it. We suppose that cor-

ner to be, very near if not exactly at the point where 'the base
line or 31st degree of north latitude intersects the Sabine
River. That the County of Rapides should extend to the
Sabine River, is evident from a perusal of the act of September 5, 1812, 1 B. & C's. Dig. 174, defining the boundaries of
the County of Natchitoches, which is said to be · bounded
"south by the County of Rapides" and west by the Sabine.
If the County of Rapides was not to extend to the Sabine, the
County of Natchitoches would join Opelousas.

Assuming these principles as correct, if we draw a direct
line from the confluence of the Red River and the Rigolet de
Bon Dieu, to the point on the Sabine ·where the base line or
31st degree of north latitude intersects the Sabine, then according to the maps and the evidence, the Lannacoco Prairie,
with the exception of a very small part, will be in the Parish
of Natchitoches, if the line should bear· more south, then all
of it would be in that Parish.

As there is necessarily some uncertainty ·in making calculations from maps, as to lines not run, we have looked carefully
into the parol testimony in relation to the domicil of the defendant. In settling a boundary not fixed by actual observation
and survey, some weight must be given to general understanding and common acquiescence. Calvit, a witness, says he
lives about eight miles south of the defendant, that he lives in
Rapides, and he considers the people in the Prairie as also
residents of that Parish. As to himself, he is probably· correct,
but as to the others, we think the weight of testimony is in
favor of their being residents of Natchitoches. This witness
further says, the residents of the Prairie vote and pay taxes in
Rapides, but he names no one but himself who does. On the
other side, Davion says, he has known the Prairie Lannacoco
for fifty years, and always considered and understood it was in
the Parish of Natchitoches. Burnet, formerly sheriff of that
Parish, though not very positive, considers them in that
Parish. A brother of the defendant who lives near him, and
also sued in a similar action, is proved to have been on the tax

In settling and determining boundaries not fixed by actual observation and survey, some weight must be given to general understanding and common acquiescence.

WESTERN DIS.
October, 1841.

LECOMTE
vs.
SMART.

list in Natchitoches. The testimony of Lee and Plaisance go to confirm the views of the other witnesses. We therefore think the judgment of the District Judge, as to the jurisdiction, is not shown to be so erroneous as to authorize us to reverse it.

Before proceeding to the merits, our attention is called to a bill of exception taken by the defendant. On the trial, the plaintiff offerred "as evidence a report of the commissioners of the land office, and other evidences of title," to the admission of which, the defendant, by his counsel objected, on the ground that no evidence of title could be given in this action; but the judge was of opinion the documents were admissible to prove the character and extent of plaintiff's possession, for which purpose they were offered. We think the judge did not err. It is true no inquiry could be made into the validity of the title in this action, but it was evidence to show the extent of plaintiff's possession. He claimed to possess as owner two square leagues including the whole Prairie, and as he did not have it all enclosed, it was necessary to show how far his possession extended by an exhibition of papers purporting to be muniments of title.

Title papers are admissible in evidence in a possessory action, to show the extent and limits of the plaintiff's possession; altho' no inquiry can be had as to the validity of titles in this action.

On the merits, the plaintiff showed he and those under whom he claims, have for more than forty years possessed as owners, all of the Lannacoco Prairie and some of the woodland surrounding it. A *vacherie* has been kept there for many years; there were houses erected, and fences and enclosures made, some persons white or black were always there in possession for him or his ancestors, and a large stock of cattle ranged and grazed on the Prairie. The defendant not having any right, went upon the land, selected a spot on which he proposed to settle, and erected buildings, enclosed a field, and commenced making crops on the land, although he was informed before he commenced his operations, that the plaintiff claimed the land as owner.

We think the possession of the plaintiff is sufficiently established, and he must recover unless his action is pres-

ċribed by one year. This is the principal reliance of the defendant, and we have carefully examined the evidence in relation to the character and length of his possession.

The citation was served on the defendant on the 10th of May, 1838. The conclusions we draw from the testimony of all the witnesses, who, in some respects contradict each other are, that the defendant went to the Lannacoco Prairie about the last of December, 1836, for the purpose of selecting a situation to settle. He made choice of a spot, planted a few peach trees, cut down some trees and made an enclosure, but of what kind or to what extent is not definitely shown. He staid but a short time, then went to Mississippi where he had business, remained some weeks, and returned to the Lannacoco Prairie for a few days; he then left, returned to his family in the Parish of St. Landry, a distance of many miles, where he remained, made a crop in 1837, and again returned to the place in question, the latter part of the year 1837, when he erected houses, made enclosures to the extent of from twenty to thirty acres, removed his family, and in 1838 made a crop on the place. The defendant contends he took possession of the premises in 1836, or early in January, 1837, and had never abandoned it, and as the action was not commenced until April, 1838, prescription runs against it. If the defendant had have taken possession of the land under an apparent title, we should regard slight acts as evidence of an intention to take possession, but when a man without any pretence of title goes upon land which he is informed is claimed by another, he must show unequivocal and continued acts of possession for more than a year, to maintain a plea of prescription. In this case, the plaintiff contends that if the defendant had possession in 1836, or in January, 1837, he had abandoned it, and his possession did not really commence until about December, 1837. Of this opinion was the District Judge, and we do not think he erred. The articles 3999 and following, of the Civil Code, relied on by the counsel for the defendant, do not, in our judgment, go to the extent he

Where a person takes possession of land under an apparent title as his own, slight acts will be received as evidence of an intention to take actual possession.

But where a man without any pretence of title, goes upon land claimed by another, he must show unequivocal acts of possession, more *than a year*, to maintain the plea of prescription.

desires.    The defendant was distinctly informed the plaintiff had a claim to the land in question, his establishments were there, and there is but little merit in the plea, that he went openly and publicly, and took possession of property which he knew did not belong to him, in violation of the rights of another. We do not think the defendant's plea of prescription will avail him.

The defendant complains the judgment is so indefinite, it cannot be executed.    The plaintiff claims to be the possessor of two square leagues covering the whole Lannacoco Prairie, and some of the surrounding wood-land; the judgment accords it to him, the evidence shows he possesses all the Prairie and the wood-land surrounding, which is shown to include the place where the defendant has his houses and enclosures; of these the defendant is adjudged to be the wrongful possessor, and from which he is to be ejected.    There is an obvious distinction between this case and that in the 8 La. Rep. 409, relied on in the argument.

The judgment of the District Court is therefore affirmed with costs in both courts.