# TEXAS AND PACIFIC RAILWAY COMPANY *v.* SMITH.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
WESTERN DISTRICT OF LOUISIANA.

Argued and submitted December 19, 1894. — Decided June 3, 1895.

When the receipt given by a local land office to a preëmptionist, acknowledging the payment of the preëmption money, is sufficient on its face to transfer the full equitable title to him and does not disclose when his rights to the land were initiated, his vendees are not chargeable, as matter of law, with knowledge of the fact that the land at the time was not subject to preëmption or homestead.

THE facts in this case were as follows: On May 14, 1853, William W. Smith purchased from the State of Louisiana a tract known as Cross Lake, in section 25, township 18, range 14, containing twenty-one and eighteen one-hundredths acres. The title of the State rested on the claim that the land was swamp and overflowed, and passed to it under the acts of Congress granting such lands to the States. On December 3, 1857, the State filed a petition in the District Court of the parish of Caddo to set aside such purchase and cancel the certificate of entry. While this action was pending, and before any trial, William W. Smith died, and the action was revived in the name of John W. Smith, administrator of his succession. Such administrator appeared and answered. The heirs of William W. Smith were not made parties, but upon the petition of the State and the answer of the administrator the action was tried before a jury, and a verdict returned in favor of the State, annulling the sale and cancelling the certificate. A judgment was, on November 20, 1860, entered upon this verdict, from which the administrator took an appeal to the Supreme Court of the State, but such appeal was afterwards and on August 11, 1869, dismissed by the consent of counsel.

On February 24, 1872, at the local land office of the United States, W. D. Wylie entered as a homestead the same tract

under the description of lot 15, in section 25, etc.  On October 19 of that year he changed his homestead to a preëmption entry, paid the government price for the land, and received a final receipt therefor.  This receipt was recorded in the recorder's office of the parish of Caddo on November 20, 1872, and on the same day he conveyed a two-thirds interest in the land to Hotchkiss & Tomkies.  On December 1, 1874, a United States patent was issued to Wylie for the land.  Prior to his homestead entry, and on April 27, 1871, an act was passed by the State of Louisiana incorporating the city of Shreveport, and the tract in controversy was within the boundaries of that city as defined in the act of incorporation. In the spring of 1872 Wylie went into actual possession of the premises, and such possession has continued in him and his grantees up to the present time.  By sundry mesne conveyances the title of Wylie passed to plaintiff in error.

This action was commenced in the Circuit Court on May 1, 1886, by the defendants in error, as heirs of William W. Smith, to recover possession of the land.  Among the defences set up by the railway company was that of the statute of limitations, or prescription as it is called in the legislation of Louisiana. The case came on for trial on February 28, 1891, and resulted in a verdict and judgment for plaintiffs.  Thereupon the defendant sued out this writ of error.

*Mr. W. W. Howe* for plaintiff in error.  *Mr. John F. Dillon* and *Mr. Winslow S. Pierce* were on his brief, on which they submitted.

*Mr. A. H. Leonard* for defendants in error submitted on his brief.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

It is unnecessary to consider any questions other than those which arise upon the instructions of the court in respect to the matter of prescription.  The possession of the defendant

and its grantors had continued from the spring of 1872 until the commencement of this action — about fourteen years — four years longer than the time named in the statute. And the title under which this possession commenced was under instruments in legal form, executed by the proper officers of the United States, and apparently conveying full title. The receiver's receipt issued to Wylie was in these words:

"No. 17,830.

"RECEIVER'S OFFICE AT NATCHITOCHES, LA., *Oct.* 19, 1872.

"Received from William D. Wylie, of Caddo Parish, Louisiana, the sum of forty-seven dollars and forty cents, being in full for the lot No. 15 south of the bayou, of section No. 25, in township No. eighteen (18), of range No. fourteen (14) west, containing eighteen acres and ninety-six hundredths, at $2.50 per acre.

"47.40.                    J. JULES BOSSIER."

There is nothing on the face of this receipt or in the deed made on November 20 following by Wylie to Hotchkiss & Tomkies to indicate that the land was swamp or overflowed, or that it was within the corporate limits of the city of Shreveport, or tending to show when Wylie first entered upon it and initiated the right of homestead or preëmption. And the same is true of the patent issued two years thereafter. Such a title is the "just title" which, within the terms of the Louisiana statutes, is the beginning of a right by prescription. And this is true whether we regard simply the receiver's receipt or the patent. Indeed, a patent from the United States is the highest evidence of title. As said by Mr. Justice Catron, in *Hooper* v. *Scheimer*, 23 How. 235, 249 : "This court held, in the case of *Bagnell et al.* v. *Broderick*, 13 Pet. 450, 'that Congress had the sole power to declare the dignity and effect of a patent issuing from the United States; that a patent carries the fee, and is the best title known to a court of law.' Such is the settled doctrine of this court."

There may be a question whether the patent in this case was not something more than the "just title" needed in prescrip-

tion, and whether it was not conclusive as to the full title upon all the parties to this litigation. But that matter we shall not stop to consider, as it does not seem to have been discussed by counsel. It is enough for the purposes of this case if it be only a "just title." Articles (3447) 3481, (3448) 3482, and (3450) 3484 of the Louisiana Civil Code are as follows:

"Article (3447) 3481. Good faith is always presumed in matters of prescription, and he who alleges bad faith in the possessor must prove it."

"Article (3448) 3482. It is sufficient if the possession has commenced in good faith; and if the possession should have afterwards been held in bad faith, that shall not prevent the prescription."

"Article (3450) 3484. By the term just title, in cases of prescription, we do not understand that which the possessor may have derived from the true owner, for then no true prescription would be necessary, but a title which the possessor may have received from any person whom he honestly believed to be the real owner, provided the title were such as to transfer the property."

This matter has been frequently considered by the Supreme Court of that State. See among other the following cases: *Carrel's Heirs* v. *Cabaret*, 7 Martin, O. S. 375, 406; *Fort* v. *Metayer*, 10 Martin, O. S. 436, 439; *Dufour* v. *Camfranc*, 11 Martin, O. S. 675, 715; *Frique* v. *Hopkins*, 4 Martin, N. S. 212, 225; *Eastman* v. *Beiller*, 3 Robinson, La. 220, 223; *Hall* v. *Mooring*, 27 La. Ann. 596; *Giddens, Executor*, v. *Mobley*, 37 La. Ann. 417, 419; *Barrow* v. *Wilson*, 38 La. Ann. 209, 213; *Pattison* v. *Maloney*, 38 La. Ann. 885, 888.

In the first of these cases the court said: "When the law says that a title defective in point of form shall not be the basis of prescription, what does it mean? A title, which, though apparently good, has some latent defect? Certainly not. A title, which, though apparently clothed with all the formalities required by law, may be proved defective by extensive evidence? No. It means a title, on the face of which the defect is stamped. And why? Because the holder of such a

title cannot pretend that he possesses in good faith; for he is supposed to know the defect of form which his title shows, and cannot plead ignorance of law. But admit latent nullities, unknown in point of fact to the possessor to prevent prescription, and what does good faith avail him? Or, rather, what becomes of the whole doctrine of prescription?" In the second: "He who alleges ill faith, is bound to the strictest proof, for the presumption is against him." In the third case the title relied on was a sheriff's deed, and in respect to this the court observed: "The title presented here is perfect as it respects form; it pursues the very words of the statute; the defect is a want of right or authority in the sheriff to make such a conveyance, not a defect in the manner he made it. As nothing, therefore, appears on the face of the deed which is defective, the knowledge of want of right, in the person who sold, is not brought home to the vendee, and his error was one of fact, not of law. It is difficult to see where is the difference between this case and an ordinary one of sale, where the purchaser acquires, from a person who has no title, by a regularly executed act, before a notary public; p. 715. In such case the buyer acquires none, but he has that good faith which enables him to plead prescription." In *Eastman* v. *Beiller* we find this language: "A title defective in point of form cannot be a basis for prescription. By this the law means a title, on the face of which some defect appears, and not one that may be proved defective by circumstances, or evidence *dehors* the instrument." In *Hall* v. *Mooring* the title of the defendant was a patent from the United States and a deed from one apparently the agent of the heirs of the patentee. It was objected that the agent did not in fact have authority, but, nevertheless, the deed made by him was held sufficient for the purposes of prescription, the court saying, p. 597: "The want of authority in Wright [the agent] to sell the lands is the only defect in defendant's title. If that defect did not exist, his title would be perfect without the help of prescription. The defendant's title is apparently perfect; so is the mandate of Wright. The defect complained of is *dehors* both acts, and was only made manifest on the

trial of this case." In *Giddens, Executor*, v. *Mobley*, a tax deed was shown, and it was held sufficient for the purpose of prescription, the court saying : " Where the deed is perfect in form, and the defect is want of right or authority in the officer to make it and not in the manner of making it, the knowledge that the officer had no right to make the sale is not brought home to the buyer." In *Barrow* v. *Wilson* the defendant claimed two tracts, and the title under which he claimed prescription was as to one, a patent from the State for land as swamp land, and the other, a tax deed, and the conclusions were as in the other cases, the court saying, in reference to the patent from the State : " Upon its face that muniment of title is transferable of the ownership of the property which it purports to convey."

These authorities sufficiently disclose the rule of law recognized in the State of Louisiana, and, of course, are controlling in the Federal courts. The learned circuit judge deemed that the principles sustained by these decisions were inapplicable on the ground that this land was swamp and overflowed land, and was also within the limits of an incorporated city, and that knowledge of these facts was chargeable to the parties in the chain of title. We quote from the bill of exceptions :

" As to Wylie, I charged that his title was a nullity, and, under the undisputed facts in relation to the land lying within the city limits, and as to its character being that of swamp and overflowed land in 1849 and continuously afterwards, and under the law forbidding public lands to be sold when lying within a city's limits, and the law of Congress of 1849 donating such swamp and overflowed lands to the State, Wylie is charged with knowledge of such facts and law, and the certificate given to him cannot be taken as a basis for the beginning or recurring in his favor of the prescription of ten years.

" I charged further in relation to testing the good faith of Wylie and vendors, Hotchkiss & Tomkies, that they should be charged with such knowledge as is shown to have been in the common knowledge of the men and community of Shreveport, their place of residence, as to the land being swamp and overflowed land in 1849 and continuously thereafter, unless

the jury from other evidence in the case should believe otherwise as to such knowledge in them; that they should be charged with knowledge of the fact that the land was in the city limits by the description of the land in the certificate under which Wylie sold, and which was recited in the act of sale to them, and they should be charged with knowledge of the act limiting the swamp and overflowed lands in 1849 to the State and of the law forbidding public lands of the United States lying within city limits to be sold to any one under the homestead or general land laws."

We think there was error in these instructions. Neither the fact that this was swamp and overflowed land, nor that it was within the limits of the city of Shreveport, appear upon the face of the receipt or patent. They are facts *dehors* those instruments. So far as respects the character of the land as swamp and overflowed land, it must be assumed from the statement made by the judge that the testimony showed that it was of such character in 1849 and continuously afterward. It must have been so in 1849 or no title passed to the State; but the fact that it was swamp and overflowed land in 1872 when Wiley entered it as a homestead does not prove that it was of similar character in 1849, nor that the title passed to the State under the act of Congress. It is a well known fact that land, by subsidence or elevation or through other causes, in a series of years may change its character, at one time being swamp and overflowed and at another dry upland. If it be conceded that Wylie was charged with knowledge of the fact that in 1872 it was swamp and overflowed, it does not follow that he is also chargeable with knowledge of the fact that twenty years before it was in like condition. No patent or conveyance had been made from the United States to the State. No selection or identification of the land as swamp land had ever been made by the land department of the government, and when Wylie's application to enter it as a homestead was recognized in that department he had a right to assume that it was land which did not pass by the act of 1849 to the State. At least, he is not chargeable as a matter of law with knowledge of its condition in 1849, or that by reason

of such condition it was among the lands granted by act of Congress to the State.

With reference to its location within the limits of an incorporated town, even if it be true that Wylie, as the party entering, was charged with knowledge of the territorial limits of the town, and that this tract was within such limits at that time, (a matter upon which we deem it unnecessary to express an opinion,) it must be borne in mind that neither the receiver's receipt nor the patent disclosed when Wylie first entered upon the land for the purposes of making it his homestead, or when he first initiated his rights in respect thereto. The city was incorporated in 1871, the receiver's receipt was issued in October, 1872. Wylie might have been in occupation of the land years before the incorporation of the city, might have made application to enter it as a homestead before such incorporation, and a right thus initiated would not be defeated by the subsequent act of the State in incorporating the city. It follows, therefore, that as the receipt, which was upon its face sufficient to transfer the full equitable title to Wylie, did not disclose when his rights to the land were initiated, his vendees, Hotchkiss & Tomkies, were not chargeable as matter of law with knowledge of the fact that the land was, at that time, not subject to preëmption or homestead. In other words, upon the face of the papers a good title was transferred to Wylie, and the matters upon which the learned judge relied were not such as of law the purchasers were charged with knowledge of. Other circumstances must appear to show knowledge and a want of good faith on their part, or else the title presented must be held a "just title" upon which to rest the claim of prescription.

For the error in these respects the judgment is

*Reversed, and a new trial ordered.*

MR. JUSTICE WHITE concurs in the judgment, but not in the reasons given therefor.