### No. 11,807.

### W. H. MICHEL ET AL. VS. ERNEST H. STREAM.

A declaration that one has never been divested of his *ownership* and *possession* may be true as a legal proposition and conclusion of law, as to his *ownership*, and yet not true from that standpoint as to his *possession*.  C. C., Arts. 496, 3434, 3435.

Ownership may remain in the original owner and the *possession* both actual, civil or constructive, be lost to him.  Possession being the less important right is more easily lost than ownership.

Parties advancing claims, in determining which questions of possession enter as a factor in their favor, are called on to make a much stronger showing as against persons in actual possession of property under claims of ownership than they are against those same parties urging the same claim of ownership while entirely out of possession.

A plaintiff not in possession can not force a defendant in possession to assume the attitude of a plaintiff in a petitory action; such defendant has a right to stand on his possession.

When a plaintiff, so far from calling the defendant to set up title and justify under it, selects for himself certain transfers as being those under which defendant holds, and asks that the defendant be prohibited from setting up those particular transfers, the action will be held as a disguised personal action of nullity directed against a specifically named chain of title, and barred by ten, if not by three or five years' prescription.

| | |
|---|---|
| 48 | 341 |
| 48 | 590 |
| 49 | 1475 |
| 49 | 1477 |
| 48 | 341 |
| 50 | 38 |
| 50 | 39 |
| 48 | 341 |
| 52 | 1158 |
| 48 | 341 |
| 107 | 585 |
| 48 | 341 |
| 109 | 650 |
| 48 | 341 |
| d111 | 610 |
| 48 | 341 |
| f118 | 850 |

A
PPEAL from the Civil District Court for the Parish of Orleans
King, J.

---

*Lloyd Posey* for Plaintiffs, Appellants.

Michel et al. vs. Stream.

*D. B. H. Chaffe* and *Geo. C. Preot* for Defendant, Appellee.

---

Submitted on briefs November 7, 1895.
Opinion handed down January 6, 1896.
Rehearing refused February 10, 1896.

---

The demand of plaintiffs is for judgment quieting them *in the possession* of one undivided half of the property in controversy, prohibiting and enjoining defendant from asserting or claiming as owner their undivided half of said property, and decreeing the inscription of said sale of the whole of said property to the defendant Stream, of May 18, 1893, to be null and void, and that it be ordered canceled and erased in so far as the one undivided half of petitioners is concerned, and in so far as it may be claimed that Stream's title purports to divest petitioners' half interest in said property, and for general relief.

On the 26th of October, 1894, a judgment by default was entered against defendant, the minutes reciting that defendant had failed to answer, though cited.

On the same day defendant, without setting the default aside, filed two exceptions. In the first he excepted that plaintiffs' petition sets forth no good cause of action against exceptor; in the second he pleaded as a peremptory exception the prescription of two, three, five and ten years in bar of plaintiffs' action.

The District Court sustained the plea of prescription of ten years, and gave judgment in favor of defendant and against plaintiffs, dismissing their suit. Plaintiffs appealed.

---

The opinion of the court was delivered by

NICHOLLS, C. J. We find in the record an agreed statement as to certain facts, which declares—

"It is admitted that John Chaffe & Sons and William H. Chaffe & Co. have paid all the taxes on the property since their acquisition of the property in 1882, and it is admitted that William H. Chaffe & Co., Limited, acquired such property by purchase from the heirs of John Chaffe and from the members of the firm of John Chaffe & Sons; and it is admitted that Charles F. Buck purchased the property in

controversy March 22, 1870, at a sale made by Moses Fox, constable of Eighth Justice's Court, parish of Jefferson, acting under a *fi. fa.* of said court, issued in the matter of the City of Jefferson vs. Michel, No. 466 of the docket of said court.

"It is agreed that the above admissions and statements of fact shall be used and shall take the place of the legal evidence omitted from the transcript."

We have been considerably embarrassed in ascertaining precisely what the legal situation is as presented to us by the parties in this case. Plaintiffs have obviously framed their petition with direct reference to leaving the character of their action and demand in doubt under their pleadings. They set up the purchase of the property by their father in 1853, his death in 1864, the opening of his succession in 1864, the death of their mother in 1867, the fact of petitioners' heirship to their parents as two of four children. They then aver that they have never ceased to be the owners of an undivided half of the property, and have never been divested of their ownership and possession of the same; that notwithstanding their ownership and possession, the defendant claims to be the owner through certain acts of transfer, which they designate as pretended transfers.

It will be noticed that there is no direct averment by the plaintiffs that either their parents or themselves, or any one else, has ever had actual and corporeal possession of the property; on the contrary, they aver that, at the time of their father's purchase, the land was entirely vacant and unimproved, and they aver that it is still so. It is true that plaintiffs refer to their possession, but in an indirect way; evidently referring to their father's original constructive possession. On the other hand, they do not admit that defendant has, or ever had, possession. One of the features of a petitory action is, therefore, absent from the case.

The defendant, instead of pleading prescription after answer, presented that question by way of exception when the case stood on default. He neither sets up title, nor possession in himself, in his pleadings, and all that we know, as to either title or possession, is what is referred to in plaintiffs' petition, and in the evidence found in the record, introduced by consent.

We were first inclined to think that both parties had, independently of the pleadings, gone to trial as if the defendant's pleas of

prescription had been pleaded *acquirendi causa*, and after answer, and as if defendant had made specific affirmative allegations as to the existence of the various elements going to support that kind of prescription, but we think defendant intended to plead, not by way of acquisition of the property through prescription, but in bar of plaintiffs' action, and that the evidence and admissions in the record were admitted only, in so far as they could be utilized for that purpose, as going to show that defendant was in possession of the property, and traced his ownership and possession back to a tax title in order to get the benefit of the shorter prescription accorded to purchasers in possession under tax titles.

Whatever advantages plaintiffs could have derived from the manner and circumstances under which defendant pleaded they have waived.

Taking the case as we find it, we do not think plaintiffs occupy the position before us of parties in possession of the property to which they refer in their petition.

Plaintiffs' father unquestionably became the owner of that property by purchase in 1853, but it was then vacant and unimproved, and, in so far as he and his heirs are concerned, it has always so continued. The only possession which they have ever had has been the legal or constructive, or what might possibly be called intellectual possession, springing simply from the fact of purchase, and the last manifestation of any claim or act of ownership by them, of which we have knowledge, is that evidenced by the succession proceedings in the succession of John J. Michel, in 1864. Plaintiffs' declaration that they have never been divested of their ownership and their possession may be true as a legal proposition and conclusion of law as to their ownership, and yet not true from that standpoint as to their possession.

Article 496 of the Civil Code declares that "the ownership and possession of a thing are entirely distinct.

"The right of ownership exists independently of the exercise of it. The owner is not less the owner because he performs no act of ownership, or because he is disabled from performing any such acts, or even because another performs such acts without the knowledge or against the will of the owner. But the owner exposes himself to the loss of his right of ownership in a thing if he permits it to remain in the possession of a third person for a time sufficient to enable the latter to acquire it by prescription."

*Article C. C. 3434* declares: "That since the use of ownership is to have a thing in order to enjoy it and to dispose of it, and that it is only by possession that one can exercise this right, possession is, therefore, naturally linked to the ownership. Thus, possession implies a right and a fact; the right to enjoy annexed to the right of ownership, and the fact of the real detention of the thing that is in the hands of the master or of another for him;" and—

*Article C. C. 3435* declares: "That although the possession be naturaly linked with the ownership, yet they may subsist separately from each other; for it may happen that the actual possessor is not the true owner."

It is a matter of every-day occurrence for the possession of a thing to be severed or separated from the ownership of the thing. The ownership may remain in the original owner and the possession, both actual, civil or constructive, be lost to him. Possession being the less important right is more easily lost than ownership.

Referring to possession, *Art. 3444* of the Civil Code says: "To retain the possession of a thing, when a man once has it, it is not even necessary that he should have such positive intention; a negative intention suffices, that is, it suffices that the positive intention, which he had in acquiring possession, shall not have been revoked by a contrary intention, for so long as this revocation does not take place, the possessor is supposed always to retain his first intention unless a third person has usurped or taken from him the possession, or he has failed to exercise an actual possession during ten years."

From this it will be seen that the Code recognizes the existence of an "abandonment," as it were, of the right of even the constructive or civil possession, resulting from ownership, not necessarily working an *abandonment of ownership*, but possibly modifying and affecting very materially the rights of the owner, though ownership may be retained and possession resumed. This condition of affairs, if rights or claims of third parties under color of title should have intervened, may be attended with serious (sometimes insurmountable) difficulties. So long as the original owner of property holds it in actual possession, he occupies a position of great advantage as against adverse claims advanced against him. As he loses his grasp upon the possession, he surrenders this vantage ground, and when, in order to retake his own, he should be forced to have recourse to

judicial proceedings, he may find himself successfully met by pretensions which originally would have been held utterly without foundation or merit. Prescription *acquirendi causa* and *liberandi causa* may cut off the enforcement of his rights.

Parties advancing claims in determining which questions of possession enter as a factor in their favor are called on to make a much stronger showing as against persons in actual possession of property under a claim of ownership than they are as against those same parties urging the same claim of ownership while entirely out of possession.

If at the time of a tax sale, and at the time when the adjudicatee at such a sale seeks to avail himself of his rights acquired thereunder, the owner is in actual possession, the purchaser finds himself under the necessity, in case of opposition, of having recourse to legal proceedings to be placed in possession. It is true that we have held that possession may be taken extra-judicially, if it can be done peaceably and without fraud (Martin vs. Langenstein, 43 An. 789), but in cases where the fact of possession becomes an important factor in the determination of rights as between the original owner in possession and an adverse claimant, the latter is generally held to show an originally existing actual possession. One possession should have driven out or ousted the other.

Where the original owner has abandoned or lost the civil possession of his property under Art. 3444 of the Civil Code there is not the same necessity for strictness as there would be under different circumstances.

There being a vacancy, as it were, in the possession, no existing possession to oust, acts of possession of a much lighter character can be more freely admitted as a basis for cutting off a remedy than would be exacted under different conditions. Giddens vs. Mobley, 37 An. 417; Green Bros. vs. Witherspoon, 37 An. 753; Barrow vs. Wilson, 38 An. 214; Lecomte vs. Smart, 19 La. 489; Dodeman vs. Barrow, 11 An. 91.

Referring to possession, Art. 1924, Civil Code, says: "What shall be considered as a delivery of possession is determined by rules of law applicable to the situation and nature of the property," and Art. 2247, Civil Code, says: "What a delivery of possession is depends on the nature of the property; it may be constructive or actual."

We have frequently had occsion to refer to the important bearing

which the fact of possession has in the determination of the rights of parties in matters of tax sales, where the prescription of three years has been invoked in bar of an attack upon the tax title. Breaux vs. Negrotto, 43 An. 426; Smith vs. City, 43 An. 726.

In the *Am. and Eng. Ency. of Law* (verbo *Tax Titles*), *Sec. VIII, p. 736,* it is said: "In many of the States there are what are known as special or short statutes of limitations, conferring the right to institute actions for the recovery of real estate sold for the non-payment of taxes to a period of time much shorter than that which existed at the common law for the trial of land titles. The design of these statutes is to encourage purchasers at tax sales by forcing an early determination of the legality of the sale and of the title founded thereon. The statutes designate the time from which the period begins to run, the most usually being from the time the deed is recorded. * * * As a rule these provisions operate in favor of the party in possession to bar the title of whichever party—the original owner or the tax title claimant—is during the period prescribed under the necessity of resorting to legal proceedings to obtain possession." (See on this subject Waddill vs. Walton, 42 An. 766; Lambert vs. Craig, 45 An. 1110.) "When neither party is in actual possession, a valid tax deed draws after it constructive legal possession, and makes it incumbent upon the original owner to bring his action within the period prescribed, and failing to do this the title of the grantee in the tax deed becomes perfect as if he had been in actual possession." (Am. and Eng. Ency. of Law, as cited above.)

A mere possession through stale intention in the former owner should yield to unmistakable affirmative signs of claims and evidences of ownership exhibited by the adjudicatee under his act of adjudication. (See Hooter vs. Tippett, 5 N. S. 110; Rachal Irwin, 8 N. S. 332; Cavalier vs. Moss, 2 An. 584.)

In Barrow vs. Wilson, 39 An. 403, this court, speaking of the prescription of three years fixed by the 5th Section of Act No. 105 of 1874, said: "It is distinctly a statute of prescription. It operates, not upon the rights of parties. It does not purport to validate a title which would otherwise be invalid. It simply limits the time within which the owner of the original title shall be allowed to assert his rights against the purchaser at a tax sale. * * * It is a mistake to treat this statute as one intended to *cure defects* in tax titles. It is a statute of prescription, barring an action regardless of the

merits or demerits of either side." The same view of the statute
was taken in McDougall vs. Monlezun, 39 An. 1010.

The plaintiffs in this suit did not, ignoring the tax title altogether,
institute a petitory action against defendant as being in possession
of the property, and drive the defendant to set up his title and
plead the prescription of ten years *acquirendi causa*.

Had they brought such an action and defendant had set up the
tax title as one of the links showing a divestiture of plaintiffs'
original ownership, and the title so set up was shown to be affected
with absolute radical nullities, a different case would have been pre-
sented than the one before us.

The plaintiffs, assuming that they were still in possession of the
property and that defendant was not, made a direct, though utterly
vague and insufficiently stated attack upon what he declared was de-
fendant's title, in which, as a link thereof, was a tax title under
which he held by derivative transfers. Had the plaintiffs been cor-
rect in their assumption that they were in possession, it may be that
they could have successfully eluded the plea of prescription directed
against their attack, but they were not in possession; on the con-
trary, defendant and his authors were sufficiently so to avail them-
selves of the plea.

It is admitted that all taxes have been regularly paid by them
as they were imposed since their acts of purchase. It is shown that
there has been constantly on the place a sign informing the public
that the property was held for sale by them and directing parties
desiring to purchase where to find them. It is shown that the pres-
ent defendant has paid for a sidewalk in front of the property, con-
structed by the city authorities and charged to him as owner of the
grounds; also that he has partially filled up the lot. We think that
he had obtained, under the circumstances of this case, a sufficient
foothold upon the lots to drive plaintiffs to an action against him for
recovery of ownership and possession. This is not an action of jac-
titation or slander of title. Plaintiffs are not in possession of the
property and defendant has the right to stand on his possession.
Plaintiffs can not force him, in defence, to assume the attitude of
plaintiff in a petitory action. So far from calling upon defendant to
set up title and justify under it, plaintiffs selecting themselves cer-
tain transfers as being those under which he holds, pray that he be
prohibited from setting that particular title up. They have, in our

opinion, directed their attack against the defendant in a manner which has opened .to him the exception of the prescription of the action.

There is nothing in this case which strikes us as exceptional and as barring the plea.

. As brought, plaintiffs' action is, in our opinion, a disguised personal action of nullity directed against a specifically named chain of title originating in a tax title barred by ten, if not by three or five years' prescription.    Herr vs. Martin, 90 Ky. 377.

Were we to take a different view of the action we would sustain the judgment appealed from, on the ground that plaintiffs have in their petition disclosed no cause of action.

We find nc warrant in law for a person out of possession to proceed against a party in possession under claim of ownership, as attempted by the plaintiffs in this case, prohibiting him from setting up a particular title designated by the plaintiffs themselves as defendant's source of title, and ordering the erasure upon the records of the inscription evidencing his claim of ownership.

Plaintiffs say that the tax sale, under which Buck claimed to have been owner of the property, was a nullity and conveyed no title; that John Chaffe & Co.'s rights, acquired by them from Rees, was through a quit-claim deed without warranty; that Chaffe & Co. acquired in bad faith and with notice of the nullity of the title; that this bad faith of Chaffe & Co. continued until John Chaffe & Co. sold to W. H. Chaffe & Co. on April 10, 1889, and that prescription has not accrued since that time.

Grant that the tax title was *per se* subject to attack, it by no means would follow that upon it, as a basis of title, could not be built up substantial and effective rights.    That there was, as a fact, an adjudication at a tax sale directed against the property as the property of John J. Michel or owners to Buck, which was placed of record; a sale from Buck to Rees, which was placed on record, and successive conventional recorded transfers from Rees and others down to the present defendant is admitted.    The record showed at least a claimed divestiture of the title in the original owner and a vesting of that title in the purchaser at tax sale and the parties holding under him.

It will not be questioned that the land itself was liable to taxation, whether it belonged to the Michels or to Buck, or to Rees,

and whether it was in the possession of the Michels, Buck or Rees. When the assessor came to assess the property, he was authorized, when he found (as we must assume he found) a recorded divestiture of the Michel title and a placing of the same in Rees, under and through the Michel title, to assess the property in the name of Rees. He was not called on to examine into the effective force of the tax proceedings. We have so held in the case of Prescott vs. Payne, 44 An. 650, and that of Gee vs. Clark, 42 An. 918, so that, although the tax adjudication may not have vested title in Buck, it none the less may have justified an assessment in the name of Rees. It Rees and those holding the property after Rees did not pay the taxes, the State may have been justified in proceeding to a sale of the property under an assessment in the name of Rees. The original tax deed and the subsequent acquisition of the property by Rees and others under it would have a very important bearing should the property ever pass to a purchaser under a tax sale directed against the property under an assessment against Rees, as showing that the assessment was not made against one a stranger to the property, but against one holding it as recorded owner under a derivative title from the original owner, Michel.

We know of no warrant which the plaintiffs would have in prohibiting the purchaser at such sale from setting up the original tax deed and subsequent conveyances under it as links in his chain of title. Not only is the condition of things which we have just supposed, possible, but we have reason to believe that it actually occurred in reference to this very property.

It would appear from the copy of an act, which we find in the record, that under a sale made for delinquent taxes under an assessment of taxes made upon the property while Rees stood as its recorded owner, it was sold, in 1885, to John Chaffe, one of the purchasers from Rees. Plaintiffs say that this act was never introduced in evidence, and is not properly in the record, and we can not act upon it. We do not act on or pass upon it at all. We refer to it simply by way of illustrating the fact that an action such as plaintiffs have brought, and as brought, is not a proper one, and as fortifying us in the opinion that neither of the parties to this litigation dealt below with the action as either a petitory action or an action of jactitation.

Plaintiffs in their brief urge that John Chaffe & Co. purchased the property in bad faith. We think that, although the question of pos-

session of the property enters into this case as presented, that under an exception in bar of the action the character of the possession as to good or bad faith does not.

They further claim that the act from Rees to John Chaffe & Sons was only signed by Rees, and that it was stipulated in the act that Chaffe should thereafter accept the sale by notarial act. John Chaffe & Co. unquestionably accepted the sale, paid taxes on the property and finally sold it. We do not think the mode of acceptance was important, or that the plaintiffs are concerned as to the relations between Rees and Chaffe & Sons. Citizen's Bank vs. Webre, 44 An. 334.

The judgment appealed from is affirmed.