No. 3978

Second Circuit

NUGENT ET AL. v. URANIA LBR. CO., LTD.

(January 27, 1931. Opinion and Décree.)
(February 26, 1931. Rehearing Refused.)

P. S. Gaharan, Jr., of Jena, attorney for plaintiffs, appellees.

Thornton, Gist & Richey, of Alexandria, attorneys for defendant, appellant.

DREW, J. Plaintiffs, the heirs of J. W. Robertson, and one J. E. Nugent, who acquired half interest with said heirs of Robertson by deed, brought a petitory action against the Urania Lumber Company, Limited, claiming to be the owners of lots Nos. 4 and 5 of section 28, township 11 north, range 2 east, containing 44.06 acres, more or less, setting up chain of title from the United States down to J. W. Robertson, from whom they claim to have inherited, alleging that the Urania Lumber Company, Limited, has recently

and is now trespassing and unlawfully entering the above-described land without any color of title to any part of said land and is now cutting and removing a quantity of timber growing thereon.

They further allege that, unless the said defendant is enjoined and restrained, it will continue to cut and remove the timber, which originally belongs to your petitioners; that irreparable injury, loss, and damage will be sustained by them, and that an injunction should issue, enjoining and restraining the said defendant from cutting and removing the timber standing, growing, and lying on the land above described.

They further allege that defendant has already cut and removed from the said land 75,000 feet of timber which belongs to your petitioners. They pray for a rule to issue and for temporary injunction, and, on trial, for the said temporary injunction to be perpetuated, and that they be declared the owners of the above-described land.

Defendant answers denying in main the allegations of plaintiffs' petition, alleging that it acquired the said described property on the 23d day of August, 1907, by purchase from F. M. Mills; that it purchased said property in good faith believing at the time that the said F. M. Mills was the true and lawful owner thereof, and that immediately thereafter it took actual, physical, corporeal possession of said property and has continued in actual, corporeal, and civil possession of said property since that date; that, at the time of the said purchase, its vendor was in possession of said property and had been in actual, physical, corporeal, and civil possession thereof for a period of more

than twenty years; and specially pleaded the prescription of ten and thirty years.

In the alternative, defendant alleges that J. W. Robertson, plaintiffs' author in title, never owned the property in controversy, and that plaintiffs never acquired any title thereto by inheritance from J. W. Robertson for the reasons that said property was forfeited to the state of Louisiana for taxes on same for the year 1860, on the 1st day of October, 1861; it further alleges that the succession sale from Edmond Malus to J. W. Robertson, being one of the links in plaintiffs' chain of title, was absolutely null and void; it further alleged that J. W. Robertson removed from Catahoula parish sometime between 1870 and 1880, and that he nor any of his heirs have ever paid taxes on said property since that date, nor have they exercised any rights of ownership thereof until the filing of this suit.

On these issues the case was tried in the lower court, and the judge of the lower court in a well-written opinion held that the deed to defendant by M. F. Mills, covering the property in dispute, was a deed translative of property and with no apparent defects on its face and was therefore a just title, as defined by articles 3483 and 3484 of the Civil Code, and that defendant had had actual corporeal possession of the land in dispute for more than ten years prior to the filing of this suit, but held that defendant was not a possessor in legal good faith and therefore could not invoke the prescription of ten years; and awarded judgment to plaintiffs, as prayed for. From this judgment, the defendant has appealed to this court.

Plaintiffs set up title in themselves from the United States government down to their ancestor, J. W. Robertson, from whom they claim to have inherited and were placed in possession as his heirs. Defendant denies plaintiffs' title and also pleads the prescription of ten and thirty years. There is no proof to sustain the thirty-year prescription, as defendant only claims to have acquired the property in 1907, and said claim is not urged in this court. The plea of prescription of ten years is serious.

In a petitory action met by the defense of the prescription of ten years, the main legal discussion involves the question of the alleged just title, the good faith, and length of time of the defendant's possession of the property in controversy. The legality or validity of plaintiffs' title is a question of secondary consideration which comes up only in case defendant's plea of prescription should not be found good.

On August 23, 1907, F. M. Mills executed to the Urania Lumber Company, Limited, a deed by private act, duly approved before a notary public in and for La Salle parish, La., to 240 acres of land, including the west ½ of northwest ¼ of section 28, township 11 north, range 2 east, which includes lots 4 and 5, the land involved in this suit, said deed also including 240 acres of timber that was sold to defendant. In the act of transfer, F. M. Mills warranted the title to all of the said property, except the west ½ of northwest ¼ of section 28, which he expressly excluded from the warranty. However, on the same day and date and at the same time he executed the following affidavit and attached to the deed:

"State of Louisiana, Parish of La Salle:

"Personally came and appeared M. F. Mills, who deposes and swears that he has been in peaceable possession of the

W½ of the NW¼ of Section 28, Township 11 North, Range 2 East, La. Mer., for about 23 years and has paid taxes on the same; that he purchased said 80 acres, together with other land from C. P. Kees and W. H. Holloman, administrator, and known as the John Robertson tract; that a portion of said eighty acres has been in cultivation years, all to the best of his knowledge and belief.

"Sworn to and subscribed to before me on this the 23d day of August, 1907..

"Henry Hardtner, Notary Public."

It is to be noticed in the affidavit that Mills claims to have purchased this property from C. P. Kees, W. H. Holloman, administrator, and the record shows that he did purchase some property from Kees at administrator's sale in the year 1884, and that Kees had acquired the property he sold Mills at tax sale of J. W. Robertson by sheriff in 1882, in which the property is described as lots 2, 3, 6, and 7, section 28, range 2, and as being the same property purchased by J. W. Robertson at succession sale of E. Malus, which is one of the links alleged in plaintiffs' title. In the deed to Mills from the succession of Kees in 1884, the property is described as lots 2, 3, 6, and 7, in township 11, range 2 east, and 160 acres, known as the "Lebanon" or Castor Springs property described as being in southwest ¼ of section 28, township 11, range 2 east. J. W. Robertson acquired from the succession of E. Malus, not the property described above, but lots 4 and 5, the property in dispute here. He acquired lots 2, 3, 6, and 7 from the succession of M. T. Ducross. Kees, on April 1, 1882, acquired at tax sale, as property of J. W. Robertson, lots 2, 3, 6, and 7, for the payment of the sum of $10, covering taxes, costs, etc., and on the same day of the same year he again acquired at tax sale as the property of J. W. Robertson the identical same property by description, with the exception that the deed stated that it was the property purchased by J. W. Robertson at succession sale of E. Malus, and the price paid to cover taxes, costs, etc., was only $9.

The record discloses that after this property was acquired by Kees in 1882, at tax sale of J. W. Robertson's property, J. W. Robertson was never assessed with any property in either Catahoula or La Salle parish, which was cut out of Catahoula, and that he nor his heirs have paid any taxes on lots 4 and 5 since that date.

It is clear from the above facts which are disclosed by the record that the sheriff made a mistake in preparing the deeds, and that the intention was to sell two separate tracts of land owned by J. W. Robertson, which we cannot reason any other way for there were two separate sales on the same day for different amounts to the same purchaser, and one deed specially refers to the property as the property purchased by J. W. Robertson at the succession sale of E. Malus, which was the property involved in this suit.

However, it is not our prerogative to correct the sheriff's deed in this suit. We merely refer to this state of facts by way of showing why defendant's author in title, Mills, had a reason for believing that he was the owner of lots 4 and 5.

The record shows that Mills cut all the merchantable cypress timber off this land in 1886; that he thought it was his land; and that no one ever claimed it before he sold it to defendant.

In 1907, 1908, 1909, and 1910, defendant cut all the merchantable pine and oak timber on the land in question, the gum and

beech at that time not being considered merchantable timber. At the same time it cut all the merchantable pine and oak on the entire 240 acres acquired from Mills; that all the merchantable hickory timber was cut off the entire 240 acres in 1913 by the Pioneer Pole & Shaft Company, who purchased the hickory timber from defendant. Defendant leased the land for drilling for oil and gas in 1919, and again in 1923, and a well was actually drilled on the property under one of the said leases and before 1924.

Defendant placed lots 4 and 5 with other land under contract with the conservation commission of Louisiana in 1913. Since that time it has protected the land from fire, trespass, ravages of insects, and has expended an average of 4 cents per acre in protecting the land each year and has paid the state of Louisiana 2 cents an acre for its part of the work under the conservation contract, thereby utilizing it for the only purpose it can be used—that of growing timber. Defendant has also paid taxes on this land since 1907.

The testimony shows the nature of the land to be such that it would be impossible to cultivate it. It is cut up in sloughs, old beds of the river, and brakes, and goes under water from five to twenty feet four or five times a year. Therefore, the use that could be made of this land is limited, and defendant has exercised the only possession of this property that it is possible to exercise, other than to fence it, which is unnecessary under the circumstances.

The lower court held that defendant had actual corporeal possession of the land for more than ten years and sufficient possession on which to base the prescription of ten years. We think his finding on this issue is correct. Article 3487, Civil Code; Morris v. Monroe Sand & Gravel Co., 166 La. 656 117 So. 763; Barrow v. Wilson, 38 La. Ann. 209; Boagni v. Pacific Imp. Co., 111 La. 1063, 36 So. 129; Industrial Lumber Co. v. Farque, 162 La. 793, 111 So. 166; and Michel v. Stream, 48 La. Ann. 349, 19 So. 215.

Having found that defendant had actual corporeal possession of the land in dispute for more than ten years, it now becomes necessary to decide if it had a just title under which it possessed. "Just Title" is treated of in Civ. Code, article 3483, as follows:

"To be able to acquire by the species of prescription mentioned in this paragraph, a legal and transferable title of ownership in the possessor is necessary; this is what is called in law a just title."

And article 3484 of the Civil Code, defines "Just Title" as follows:

"By the term just title, in case of prescription, we do not understand that which the possessor may have derived from the true owner, for then no true prescription would be necessary, but a title which the possessor may have received from any person whom he honestly believed to be the real owner, provided the title were such as to transfer the ownership of the property."

Article 3485 of the Civil Code defines a transfer sufficient to transfer title, as follows:

"And in this case, by the phrase transfer of the ownership of the property, we understand not such a title, as shall have really transferred the ownership of the property, but a title which by its nature, would have been sufficient to transfer the ownership of the property, provided it had been derived from the real owners, such as a sale, exchange, legacy or donation."

Article 3486, gives the necessary requisites:

"1. That the title be valid in point of form; for if the possession commenced by a title void in that respect, it can not serve as a foundation for prescription.

"2. That the title be certain; thus, every possessor, who can not fix exactly the origin of his possession, can not prescribe.

"3. That the title be proved; for as it consists in a fact, it is not presumed, and every man who founds his title on a written instrument must produce it, or prove the contents, if it be lost."

The deed from Mills to defendant covering the land in dispute here clearly fulfills all the requirements exacted by the articles of the Code cited above, and is a legal and transferable title of ownership to defendant of the lands here involved.

It is contended that, because the deed from Mills to defendant expressly excepted from warranty the land here involved, it was not such a legal and transferable title of ownership to the defendant that would sustain a plea of prescription of ten years. This question has been forever settled by the Supreme Court of this state in a number of cases, and in the case of Land Development Co. of La. v. Schulz, 169 La. 1, 124 So. 125, 128, the court said:

"The fact that the sale by Watts to Mrs. Schulz was made without warranty of title does not affect her plea of prescription of 10 years. A stipulation in an act of sale that the seller does not warrant the title might be regarded as an indication that the seller lacked faith in his title, but it is not an indication that the buyer lacked faith in the title"—citing Templet v. Baker, 12 La. Ann. 658; Brewster v. Hewes, 113 La. 45, 36 So. 883; Read v. Hewitt, 120 La. 288, 45 So. 143; Kinchen v. Redmond, 156 La. 418, 100 So. 607; and Clayton v. Rickerson, 160 La. 771, 107 So. 569.

The case of Eastman Syndicate v. Beiller, 3 Rob. 220, cited by plaintiffs, is not in conflict with this doctrine. Eastman v. Beiller merely lays down the general principle, which is favorable to defendant in this case, viz., a title, defective on its face, will not be sufficient on which to base a plea of prescription of ten years; alter, when the defects proceed from circumstances or evidence dehors the instrument.

It cannot be doubted that, if Mills had good title to the land he transferred to defendant, defendant would have had good title under the deed he received from Mills. There were no defects apparent upon the face of the deed, it was valid in form and prima facie translative of property. Pattison v. Maloney, 38 La. Ann. 885; Heirs of Ford v. Mills & Phillips, 46 La. Ann. 339, 14 So. 845; Guarantee Trust Co. v. Drew Inv. Co., 107 La. 252, 31 So. 736, 737; Blair v. Dwyer, 110 La. 337, 34 So. 464; Texas & Pacific Ry. v. Smith, 159 U. S. 66, 15 S. Ct. 994, 40 L. Ed. 77.

Plaintiffs' other contention is that defendant was not in good faith in taking deed to this property, basing their contention on the fact that the land in question was specially excepted from the warranty, and the further fact of defendant's requiring the affidavit by Mills as to his possession and ownership, which affidavit is attached to the deed. The judge of the lower court upheld the contention of plaintiffs and held that the defendant was in bad faith, or at least put on its guard. We cannot agree with the lower court in this finding.

"Good faith is always presumed in matters of prescription; and he who alleges bad faith in the posessor, must prove it." Civ. Code, art. 3481.

"The possessor in bad faith is he who possesses as master, but who assumes this quality, when he well knows that he has no title to the thing, or that his title is vicious and defective." Civ. Code, art. 3452.

Bad faith is not imputed to a purchaser merely because an examination of the records would have disclosed a defect in the vendor's title, and it is not necessary that a purchaser make an examination of the title before he purchases. Article 3478 of the Civil Code says:

"He who acquires an immovable in good faith and by a just title, prescribes for it in ten years."

Article 3480 of the Civil Code refers to article 503 to define "good faith," and article 503 defines a bona fide possessor as one "who possesses as owner by virtue of an act sufficient in terms to transfer property, the defects of which he was ignorant of."

Article 3451 again sets out who is a possessor in good faith.

The only evidence in the record on which we are asked to hold that defendant was in bad faith is that the defendant required an affidavit from its vendor as to his possession and from whom he had acquired the land, and we see nothing unusual in taking such an affidavit where the property was not warranted.

The president of the defendant company, who actually handled the transfer from Mills to defendant, testified without contradiction that he believed that his vendor owned this property, and that he had no reason to doubt it; that he had lived in close proximity to the land for many years and never heard of any other claimant to it until a short time before the filing of this suit, when he heard that Mr.

Nugent was trying to work up a case against defendant. He further testified that during the time this act was passed, and before that, his company seldom, if ever, had the titles examined before buying the land, and that it was not anything unusual for it to take affidavits on property it purchased; that there are now on record to defendant possibly 150 deeds, with affidavits attached. He testified that he had known the vendor, Mills, for many years, and that, with him, Mills' word was his bond; that he knew that Mills had claimed to own this particular property for many years and did not in any way doubt that Mills was the owner. Vendor's son testified that he always thought his father owned this particular property, and that his father considered it his property for many years before he sold it to defendant.

The record shows that Mills did not discuss with defendant the reason he would not warrant the property, nor did he notify defendant of any defects in the title, if he knew of them.

If the defendant did have any doubts about the title to the property, the affidavit made at the time the act was passed by the vendor, a man in whom he had the utmost confidence, would no doubt have removed any fears along that line.

Plaintiffs or their authors in title had not made any claim to this property for more than forty-six years, and had not paid taxes on it in that length of time, and we feel sure from the contracts in the record between the heirs of J. W. Robertson and one of the plaintiffs, Nugent, whereby Nugent is given a one-half interest in the property to recover it, that they would not now be claiming it if Mr. Nugent had not discovered what he con-

sidered an apparent defect in defendant's title and brought it to the knowledge of plaintiffs.

Mills had every reason to believe that he was the owner of the property, as defendant also had, and we do not think the taking of the affidavit, together with the vendor's excepting this tract of land from warranty, would justify us in holding that defendant was a possessor in bad faith. There is nothing in the affidavit to put defendant on its guard; to the contrary, it is calculated to remove any doubt he might have had.

The good faith necessary to enable a claimant to plead prescription is simply that he shall not acquire the property mala fide. Giddens v. Mobley, 37 La. Ann. 417.

In Bennett v. Calmes, 116 La. 598, 40 So. 911, the court said:

"The original vendor was in possession and sold the property by title valid in form. This was a sufficient starting-point for the prescription afterward acquired."

Defendant had just reasons to believe that it was the owner of the property purchased from Mills and it possessed the land, lots 4 and 5, as owner by exercising the only acts of possession possible on that character of land for a period of more than ten years prior to the filing of this suit, under an act or deed translative of property, and the plea of prescription of ten years acquirendi causa should have been sustained.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be reversed; that the injunction herein issued be dissolved; and that the plea of prescription of ten years filed by defendant be sustained and the demands of plaintiffs rejected at their cost.