HAMITER, Justice.
 

 Plaintiffs, who are the sole heirs of decedents P. A. Smith and his wife, Mrs. Donah Risher Smith, seek in this action to be declared the owners of a 20-acre tract of land
 
 *1024
 
 ■described as the north half of southwest quarter of southeast quarter (N.% of S.W. % of S.E.14), Section 12, Township 10 North, Range 2 East, LaSalle Parish, Louisiana. Those impleaded as defendants are the Southern Kraft Corporation, the Louisiana Central Oil and Gas Company, and the Arkansas Fuel Oil Company.
 

 The district court, following a trial of the merits of the case, held that the property belonged to the defendants by reason of the acquisitive prescription of 10 years. The demands of plaintiffs, therefore, were rejected and the suit dismissed; and they are appealing.
 

 The appeal furnishes for our consideration only the ruling that sustained defendants’ plea of prescription of 10 years acquirendi causa.
 

 Prior to October 17, 1903, the Standard Lumber Company owned the contested 20 acres and cut off it all of the merchantable timber. On that date the company sold the tract, along with other lands, to P. A. Smith Who was then living in community with his wife, the sale being by warranty deed and for a valuable consideration.
 

 During the following year, Smith conveyed to J. L. Flopkins and J. T. Edwards all of such property, except the 20 acres in question. At no time did he take actual possession of this excepted part, have it assessed to himself, or pay the taxes thereon; and neither he nor his heirs have ever asserted any legal claim to it until after oil was discovered there.
 

 On September 25, 1906, the said Standard Lumber Company executed what is styled a quitclaim deed under which there was quitclaimed and released to the Louisiana Central Lumber Company thousands of acres of land, including the disputed 20 acres. The conveyance was made without warranty of title and the recited consideration therefor was “the sum of $1.00 cash in hand paid by the vendee * * *
 

 This quitclaim deed was in partial fulfillment of a written agreement entered into by those parties on May 1, 1906, wherein the Standard Lumber Company had granted to the Louisiana Central Lumber Company “the exclusive right and privilege to purchase and acquire the entire plant and property including lands and timber belonging to the said Standard Lumber Company amounting to Forty-three Thousand (43,000) acres, 'more or less, for the sum of One Hundred Thousand ($100,000.00) Dollars, and Twenty-five ($25.00) Dollars per acre for all the lands and timber that are not cut clean of the said Standard Lumber Company, to be paid in cash on September 1st, 1906, or when conveyed and delivered.”
 

 Other pertinent provisions of that written agreement were:
 

 “It is further understood that all cut over lands that are gratis to the Louisiana Central Lumber Company will be deeded by Quit Claim deed.
 

 * * * * s|e *
 

 “It is further understood and agreed that all of the aforesaid land from which the said Standard Lumber Company has cut all the merchantable saw timber, and the farms of twenty acres or more in each forty, shall not be included in the acreage
 
 *1026
 
 taken to determine the price and shall not be charged for by the Standard Lumber Company, but shall be embraced in the sale, * * *
 

 * ❖ * * * *
 

 “It is further understood and agreed that the Standard Lumber Company will and it agrees to furnish to the Louisiana Central Lumber Company abstracts of title to all the lands embraced in this contract, satisfactory to the latter Company, or its attorneys, Stubbs and Russell, and that a majority in number and value of the individual stockholders of the Standard Lumber Company will warrant and guarantee the title of.the property hereby agreed to be sold.
 

 “It is further understood and agreed that, in the event, titles to any part of the aforesaid lands and timber shall be defective, the said Standard Lumber Company shall have twelve (12) months from September first, 1906, in which to perfect the same, after which time, the said Standard Lumber Company shall release and quit claim and in that event, it agrees and contracts to release and quitclaim to the Louisiana Central Lumber Company, any and all its rights of every kind and description in and to said lands and timber without further consideration.”
 

 Attached to the written contract were three lists describing the lands to be transferred. One of these was headed “Timber Lands and Timber” and showed a total of 64,099 acres, more or less; another described 320 acres, more or less, of “Hardwood Lands and Timber”; and the third, in which the contested 20 acres was shown, carried the title “Cut Lands and Timber” and covered an aggregate of 5,520 acres, more or less.
 

 On July 31, 1926, the Louisiana Central Lumber Company sold by warranty deed to the Bastrop Pulp & Paper Company various lands, including the 20-acre tract; but there was reserved to the vendor certain minerals and substances, particularly the oil and gas, that might be found on, in and under the lands, with rights for developing and exploring for them. By a series of conveyances, commencing with that vendee, the surface rights to the 20 acres were eventually acquired by defendant, Southern Kraft Corporation.
 

 The reserved mineral and substance rights were transferred by the Louisiana Central Lumber Company to defendant Louisiana Central Oil and Gas Company; and on January 14, 1936, this transferee executed an oil and gas lease in favor of H. L. Hunt affecting more than 60,000 acres, including the contested 20 acre tract. Hunt on July 1, 1940, assigned the lease, in so far as it covered said 20 acres and several other small tracts, to defendant Arkansas Fuel Oil Company. Later this assignee commenced and prosecuted drilling operations upon the property and obtained a producing oil and gas well.
 

 The Standard Lumber Company, notwithstanding its deed to Smith in 1903, was assessed with the 20 acres, and paid the taxes thereon, for the years 1904, 1905 and 1906. From 1907 to 1926 inclusive, the assessment was in the name of the Louisiana Central Lumber Company, and it paid the taxes. Thereafter the assessments were
 
 *1028
 
 made to the Bastrop Pulp & Paper Company and to its successors, and the taxes were paid by them.
 

 All parties litigant trace their claims to a common author, namely, the Standard Lumber Company. Plaintiffs’ claim, as before shown, is founded on the deed in favor of their ascendant P. A. Smith of date October 17, 1903; while that of the defendants is based upon the quitclaim deed executed on September 25, 1906, to the Louisiana Central Lumber Company. In this connection, the brief of counsel for defendant Arkansas Fuel Oil Company appropriately states:
 

 “ * * * It is admitted that the conveyance records of LaSalle Parish do not show that Pleasant A. Smith or any of his heirs appear to have divested themselves of record title to this tract; and, therefore, their record title would prevail over the •title acquired by Louisiana Central Lumber Company (sometimes referred to in this brief as Louisiana Central) unless that company and its successors in title acquired a good prescriptive title by virtue of its aforementioned deed, which was executed and placed of record subsequent to the deed from Standard to Pleasant A. Smith. As to why this vendor,. Standard Lumber Company, executed two deeds to separate parties, both the conveyance records and the record in this suit are entirely silent. * * * ”
 

 Ownership of immovables by the acquisitive prescription of ten years, as is said in Civil Code Article 3479, results from the concurrence of the following elements:
 

 1. Good faith on the part of the possessor.
 

 2. A title which shall be legal and sufficient to transfer the property.
 

 3. Possession for the required length of time.
 

 4. An object which may be acquired by prescription.
 

 It is not disputed that the last requirement is present. Neither could its absence be reasonably urged. The 20 acre tract is susceptible by its nature of being sold and transferred, and its alienation is not prohibited by law. See Civil Code, Article 3497.
 

 But plaintiffs urge the nonexistence of the three remaining essential elements or conditions; and these we shall discuss in the order given.
 

 A person is termed a possessor in good faith when he “has just reason to believe himself the master of the thing which he possesses, although he may not be in fact, as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another.” Civil Code, Article 3451. .
 

 The possessor in bad faith is “he who possesses as master, but who assumes this quality, when he well knows that he has no title to the thing, or that his title is vicious and defective.” Civil Code, Article 3452.
 

 “Good faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor, must prove it.” Civil Code, Article 3481.
 

 
 *1030
 
 On the trial of the case no evidence was adduced that directly discloses bad faith on the part of Louisiana Central Lumber Company when acquiring the 20-acre tract from the Standard Lumber Company under the described quitclaim deed of September 25, 1906. But appellants say that the written contract between those parties, which' preceded the quitclaim deed, must be considered; and they argue, as shown by the brief of their counsel, that:
 

 “ * * * It is plain by the whole arrangement from start to finish that both the Standard Lumber Company, the alleged vendor, and the Louisiana Central Lumber Company, the alleged vendee, definitely knew that the Standard Lumber Company had no title whatever to the said twenty acres, of which it had expressly divested itself in the sale to the said P. A. Smith on October 17th, 1903. The sale of October 17th, 1903, had been duly recorded less than three years before. The said contract expressly provided that the Standard Lumber Company was to furnish to the Louisiana Central Lumber Company ‘abstracts of title to all the land embraced’ in the contract; These were to be furnished ‘satisfactory to the latter company or its attorneys, Stubbs and Russell * * Time was provided for in which to perfect titles where such was necessary. There is nothing to show that these abstracts were not furnished. It must be presumed that they were. And the very first fact about the title anyone would have found must have been the deed of October 17th, 1903, to P. A. Smith. Any other conclusion is untenable.”
 

 'The language of the contract, to which attention is directed, justifies only an assumption that the abstracts were furnished and that they were examined. There is nothing, however, that definitely shows the occurrence of. these acts and that the Louisiana Central Lumber Company obtained actual knowledge of the outstanding title. It is possible that after the execution of the contract, and before the consummation of the sale, the vendee waived the requirements of the written agreement respecting the furnishing of abstracts on the cutover lands, of which the 20 acre tract was a part. At that time those lands were of no great value, having been previously denuded of all their timber; and, although embraced in the sale, they were referred to in the contract as “all cutover lands that are gratis to the Louisiana Central Lumber Company * * *
 

 Under the jurisprudence of this state, the prescription of ten years acquirendi causa may be invoked although at the date of purchase there stood registered on the conveyance records a deed evidencing a prior sale of the land to another. Wells v. Goss, 110 La. 347, 34 So. 470.
 

 Moreover, a purchaser will not be charged with bad faith merely because an examination of the records, if he had made it, would have disclosed a defect in the vendor’s title. Delouche v. Rosenthal, 143 La. 581, 78 So. 970; Keller v. Summers, 192 La. 103, 187 So. 69. Nor will the presumption of good faith be destroyed by proving that the vendee had the means of obtaining knowledge of the defect in his title. Keller v. Summers, su
 
 *1032
 
 pra; Dupuy v. Joly, 197 La. 19, 200 So. 806.
 

 In Land Development Company of Louisiana v. Schulz, 169 La. 1, 124 So. 125, 127, this court said:
 
 “
 
 * * * If no one could invoke successfully the prescription of 10 years who could have discovered by an examination of the public records before buying the property that the seller had no title, the plea would never be available, because no one could invoke it except one having a valid title and having therefore no need for the prescription. * * * ”
 

 Plaintiff’s burden of showing bad faith on the part of the Louisiana Central Lumber Company, in our opinion, has not been discharged.
 

 Next to be decided is the question of whether or not the quitclaim deed of date September 25, 1906, was legal and sufficient to transfer the property. Therein the 20-acre tract is accurately described. But the instrument provides for a transfer of the property without warranty, and it recites a consideration of only $1.
 

 In many decisions of this court, it has been uniformly held that a quitclaim deed, wherein property is conveyed without warranty of title, may be the basis of the ten-year acquisitive prescription. Read v. Hewitt, 120 La. 288, 45 So. 143; Land Development Company of Louisiana v. Schulz, supra; Perkins v. Wisner, 171 La. 898, 132 So. 493; Screen v. Trainor, 172 La. 51, 133 So. 359; Cherami v. Cantrelle, 174 La. 995, 142 So. 150; Nugent v. Urania Lumber Company, 16 La.App. 73, 133 So. 420; Dupuy v. Joly, supra; Perkins v. Louisiana Land & Exploration Company, 171 La. 913, 132 So. 499.
 

 The following appropriate remarks are found in Land Development Company of Louisiana v. Schulz, supra r
 

 “ * * * A stipulation in an act of sale that the seller does not warrant the title might be regarded as an indication that the seller lacked faith in his title, but it is not an indication that the buyer lacked faith in the title. * * * ”
 

 The fact that the assailed instrument showed a consideration of only $1 is of no moment.’ “An agreement is not the less valid, though the cause be not expressed.” Civil Code, Article 1894. “A just cause is always understood unless the contrary be proved.” Pack v. Chapman, 16 La.Ann. 366, 367; Read v. Hewitt, supra. The true cause or consideration of a contract may be established by competent proof. Moore v. Pitre, 149 La. 910, 90 So. 252.
 

 There did exist, however, a real consideration for the quitclaim deed, as is clearly shown by the previously executed contract which the parties agree is to be read 'in connection with that instrument. All cutover lands, including the disputed 20 acres, was part of the property for which the vendee paid $100,000.
 

 No one can deny that the quitclaim deed would have passed the full ownership of the property to the Louisiana Central Lumber Company if the Standard Lumber Company had then possessed a good and valid title thereto. It, therefore, was a
 
 *1034
 
 just title, such as is contemplated by Civil Code, Articles 3483, 3484 and 3485.
 

 Appellants do not deny that the purchasers from the Louisiana Central Lumber Company, and all subsequent vendees, held under instruments sufficient to transfer title and were in good faith. But they say, to again quote from the brief of their counsel, that:
 

 “ * * * The difficulty is that said purchasers and the successive vendees, including the present defendants, have never been in actual physical possession of the said twenty acre tract, or any part of it, and show no more in this case, by the pay-ment of taxes and otherwise, than a mere constructive or civil possession. Such would undoubtedly be sufficient to complete a prescriptive period of ten years if one had beén started by the Louisiana Central Lumber Company. We recognize that the possessor is allowed to make the sum of possession necessary to prescribe by adding to his own possession that of his author, as is provided by Civil Code, Article 3493. * * * ”
 

 Let us consider, therefore, the character of possession, if any, held by the Louisiana Central Lumber Company.
 

 Under the quitclaim deed there was conveyed to the Louisiana Central Lumber Company, among other lands, the following described tract in LaSalle Parish, Louisiana, containing 260 acres of contiguous property and embracing the disputed 20 acres:
 

 “The East Half of the Northwest Quarter (E% of NW^4), the Southwest Quarter of the Northwest Quarter (SW}4 of NWy^i and the North Half of the Southwest Quarter (N% of SW34), all in Section
 
 7,
 
 Township 10 North, Range 3 East, and the South Half of the North Half of the Southeast Quarter (S% of N% of SE1,4), and the North Half of the Southwest Quarter of the Southeast Quarter (Ny2 of SW% of SE%), all in Section 12, Township 10 North, Range 2 East.
 

 In 1916, the evidence conclusively shows, the Louisiana Central Lumber Company constructed in LaSalle Parish a tram railroad, eight or ten miles in length, known as the South Main Line. This traversed the mentioned 260 acre tract, although it was about one-fourth mile away from the disputed 20 acres, a contiguous part of that large tract. The railroad track consisted of steel rails mounted on standard cross ties, all of which lay on a graded road bed. From the time of its construction until the year 1924, the company operated thereon daily log trains made up of regular steam locomotives and standard logging cars.
 

 "Anotiler railroad track, similar in construction, was built on and through such 260 acre tract in 1923 and was known as the Edenborn Main Line. It converged with the South Main Line at a point just north of the mentioned acreage; and over it logging operations were conducted daily until 1934.
 

 It is well settled in this state that where contiguous lands, constituting in effect one tract, are acquired under the same title, the actual possession of a part thereof is equivalent to the possession of all
 
 *1036
 
 the property within the limits described in the deed. Civil Code, Articles 3437 and 3498; Leonard v. Garrett, 128 La. 535, 54 So. 984; Leader Realty Company v. Taylor, 147 La. 256, 84 So. 648; Tremont Lumber Company v. Powers & Critchett Lumber Company, 173 La. 937, 139 So. 12; Jackson v. Bouanchaud, 178 La. 26, 150 So. 567; Feazel v. Peek, 189 La. 61, 179 So. 35.
 

 Certainly the Louisiana Central Lumber Company had actual physical possession, commencing in 1916, of that portion of the mentioned 260 acre tract on which its tram roads were maintained and trains operated. This being true, and by reason of the stated doctrine of law, it must be said that such company also had possession of the disputed 20 acres that was a contiguous part of the larger tract.
 

 Furthermore, it is shown by the record that in 1925 the Louisiana Central Lumber Company, through its employees, removed all of the then merchantable timber from the 20 acres in dispute, as well as from other" lands in that vicinity which it claimed as owner. Of course, only a relatively small amount of timber was obtained from the small tract, perhaps several thousand feet, because the land had been denuded of its timber before that company acquired it; but the cutting operations extended over the entire 20 acres. Also, in more recent years, defendant Southern Kraft Corporation obtained timber from-the property.
 

 Many of these plaintiffs lived in the immediate neighborhood, and undoubtedly they, on occasions, used the public road that ran through the disputed 20 acres. Hence, it must be assumed that they knew of the aforedescribed acts of ownership displayed by the Louisiana Central Lumber Company and its successors. But no protests whatsoever were offered. Rather, they remained silent and permitted defendants and their predecessors in title to pay the property taxes year after year; and on the discovery of oil this suit was instituted.
 

 It is our opinion that the required possession, as well as all of the other elements essential to support the acquisitive prescription of ten years, has been shown; and we think that defendants were correctly declared to be the owners of the disputed property.
 

 The above described actual, peaceable and uninterrupted possession enjoyed by the Louisiana Central Lumber Company, together with the lack of any kind of possession on the part of P. A. Smith or his heirs, renders inapplicable the principle of law that as between conflicting claimants from a common author the preference shall be given to him whose title is of the more ancient date.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 ODOM, J., absent.