McCALEB, Justice.
This is a petitory action in which plaintiffs[1] are claiming an undivided 139%soo interest in certain land situated in the Parish of Calcasieu, described as “Blocks 'Two (2), Three (3), and Four (4) of the Ribbeck Subdivision, being a subdivision of Blocks 2 and 3, and the West half of Block 'Six '(6), of the. Fry, Roberts and Palmer Subdivision in the West half of the Southeast Quarter (Wi/£ of SE%) of- Section Four (4), Township Ten (10) South, Range Eight (8) West of the Louisiana Meridian”.
This property is part of a tract comprising approximately 163 acres for which plaintiffs’ ancestor, Onezime Sallier, Sr., •obtained a patent from the United State's •oil April 10, 1884. ' Prior to that date, allegedly since June of 1855, Sallier, Sr. Tiad been living with Ann Ryan, who died •on May 29, 1885, leaving seven children, all of whom were issue of her union with Sallier. Plaintiffs herein are their direct •descendants. After Ann Ryan’s death, Sallier, Sr. executed, on May 28, 1886, an instrument entitled an “Act of Legitimization and Obligation to Donate” which declared that he and Ann Ryan, being slaves, began living together in 1855 as man and wife and continued so to live until her death in 1885.; that seven children (naming them) were born of the union; that he desired to acknowledge them as his legitimate offspring; that, as it was his intention to contract a second marriage, he wished to donate-to each of his children 11% acres of his land situated in the EJ4 of the SW54 and the NW% of the SE14, S. 4, T. 10 S., R. 8 W., and that he bound himself to make this donation when a survey for a division of the land could be completed. Thereafter, Sallier, Sr. donated to each of his seven children and to the minor child o,f his nephew, Frank Ryan, portions of the tract of land acquired by him under the patent issued on April 10, 1884. However, none of the land involved in .this suit is comprised in those conveyances.
Subsequently, on October 15, 1891, Sallier, Sr. sold to W. R. Fry, A. L. Roberts and T. L. Palmer the Wi/2 of the SE^4 of Section 4, Township 10 S., Range 8 W., less certain portions. This sale included all the property now in controversy. Fry, Roberts and Palmer subdivided the land acquired by them into blocks and lots, as shown by a certain plat filed on March *627 18, 1893, in the Conveyance Records of Calcasieu Parish. The property, as thus subdivided, was then partitioned in kind by the owners and, though mesne conveyances, defendant, Carl Ribbeck, purchased the contested land by authentic acts dated November 21 and 22, 1934. On April 13, 1937, Carl Ribbeck conveyed to the other defendant, Albert W. Ribbeck, Jr., a portion of the property designated as Block 2 of the Fry, Roberts and Palmer Subdivision.
Plaintiffs contend that they are the lawful owners of an undivided interest in the land as there was a valid slave marriage between Sallier, Sr. and Ann Ryan; that, at the death of Ann Ryan, her one-half community interest in the said property was inherited by her children; that, therefore, Sallier, Sr. was unable to grant full ownership when he sold the property to Fry, Roberts and Palmer and that, accordingly, the interest to which they have succeeded has never been divested.
Defendants deny that there was a valid slave marriage between Ann Ryan and Sallier, Sr. and alternatively assert that, should it be held otherwise, plaintiffs are estopped from assailing the transfer of Sallier, Sr. as his seven children unconditionally accepted his succession and are, therefore, bound by his acts, particularly the title he warranted to Fry, Roberts and Palmer. Further in the alternative, defendants contend that plaintiffs are without interest in the property, as Sallier, Sr., by his act of legitimization and donation, transferred to each of the children' of Ann Ryan the share that would have been coming to them had her succession been opened; that each of the children accepted the particular portions of property donated as their share, thus acquiescing in the action of their father, and that these plaintiffs, as legal heirs of those children, are estopped from asserting further claim some seventy-six years thereafter. In addition, defendants plead the acquisitive prescription of ten years provided by Article 3478 of the LSA-Civil Code.[2]
After hearing the issues, the trial judge expressed the opinion that plaintiffs had failed to establish the asserted slave marriage between Ann Ryan and Sallier, Sr. and, moreover, that they were estopped from challenging the title warranted by Sallier, Sr. to his vendees and their successors in title forasmuch as his children (through whom plaintiffs claim) had accepted .his .succession unconditionally and were, therefore, bound by all his acts. In conformity with this view, plaintiffs’ demand was rejected and judgment was also' rendered recognizing defendants as owners of the property in controversy.[3] Plaintiffs have appealed.
*629 Our review of the case has convinced us that defendants have a valid prescriptive title to the property. Accordingly, a consideration of plaintiffs’ claims may he pretermitted and we will assume, for purposes of discussion, that plaintiffs had title to an interest in the land and that their interest was not divested unless defendants have acquired a superior title by the ten-year prescription.
The essential elements for this species of prescription are set forth in Article 3479 of the LSA-Civil Code to be (1) good faith on the part of the possessor, (2) a title translative of the property, (3) possession during the time required by law, and (4) an object which may be acquired by prescription.
The third and fourth elements are conceded to exist in this case as plaintiffs have stipulated that defendants are and have been in actual continuous physical possession of the land as owners since November 22, 1934, and that their occupancy has been such as to constitute a possession adverse to other claimants so as to be a basis for a prescriptive title.
Counsel for plaintiffs, however, questions the good faith of defendants maintaining that Carl Ribbeck knew that the title to the property was not merchantable at the time he bought it as he had abstracts in his possession indicating its defects.
The contention is not substantiated by proof. Article 3481 of the LSA-Civil Code provides that “Good faith is always ' presumed in matters of prescription; and he who alleges bad faith in the possessor, must prove it.” No evidence of probative force has been offered by plaintiffs to establish their claim of bad faith,[4] Defendant, Carl Ribbeck, testified that he believed his vendors to be the true owners of the property when he purchased it in 1934, and that later, in 1940, an examination of title became necessary as the result of a controversy respecting one of its boundary lines. He further declared that several days after his purchase an abstract of the title of the property was sent to him by his vendors, the executors and trustees of the Succession of Henry G. Aggs, but stated that he put it away without reading it and did not place it in the hands of his lawyer for examination until 1940, when the boundary question arose. Hence, since his possession was commenced in good faith, his right to a prescriptive title was *631 not affected either by the receipt of the abstract of title several days after the sale or by the subsequent title examination, even though the abstract or the examination might have apprised him of defects. Article 3482 of the LSA-Civil Code; Smith v. Southern Kraft Corporation, 202 La. 1019, 13 So.2d 335 and cases there cited; c. f. Arnold v. Sun Oil Co., 218 La. 50, 48 So.2d 369.
It is also beyond doubt that defendants’ title is translative of the property. Nevertheless, counsel for plaintiffs, in oral argument and by supplemental brief, professes that defendants’ title to the part of the land described as Block 2 of the Fry, Roberts, Palmer Subdivision is not translative of that property for the reason that the deed states that it is situated in the NW% of the SE%, whereas, the plat of the Fry, Roberts and Palmer Subdivision on file in the conveyance office designates 0 , . ... cun/ ctm/ Block 2 as being m the SW% of the SE^.
There is no substance in this proposition. The description of the property as Block 2 of the Fry, Roberts and Palmer Subdivision is sufficient in itself to'be translative of the property as there is only one Block 2 in the entire subdivision. See Snelling v. Adair, 196 La. 624, 199 So. 782. Therefore, it matters not whether Block 2 is in the NW^ or SW14 of the SE^, although it is clear that, from the measurements shown on the plat itself, Block 2 is correctly described in the deed as being in the NW% of the SE%, since it is more than 1,335 feet[5] north of the lower section line of Section 4.
, , , . , The judgment appealed from is affirmed.

. There are over 70 in number and they allege that they are all the lawful heirs of Ann Ryan, excepting two minors, who are not parties to the proceeding.

. They also pleaded the thirty-year prescription as adverse possessors hut this plea has been abandoned.

. It is to be noted that, since the judge merely found that plaintiffs had no legal interest in the property and did not con *629 sider the merits of defendants’ title, it would have sufficed to have dismissed plaintiffs’ suit. However, in view of the conclusion that we reach that defendants’ prescriptive title is valid, the decree of the Court conforms with our decision.

. Several witnesses were called by plaintiffs but the substance of their testimony is merely that the father of defendant, Oarl Ribbeck, called upon them sometime in 1933 or 1934 to inquire as to whether they had an abstract of certain oil lands in the vicinity. No evidence was adduced to show that Oarl Ribbeck ever inquired about an abstract or that he was present when the alleged request was made by his father.

. The quarter quarter section is 1,320 feet square.