REID, Judge.
Mrs. Emily Hansbrough, wife of Albert A. Wilson, Isabell Hansbrough, wife of Charles H. Russell, Jr., and Calvin Hans-brough as the sole heirs of the late Peter Harrison Hansbrough bring this suit as a petitory action against the Gulf, Mobile and Ohio Railroad Company asking to be recognized as the owners of the following described piece or parcel of land, to-wit:
“All of the northern half of the southern half of Square No. 83, located in the Town of Mandeville, in this Parish and State.”
The petitioners acquired this property from the Succession of Peter Harrison Hansbrough No. 1169 of the 22nd Judicial District Court in and for the Parish of St. Tammany. They set up their title by mesne conveyance back to 1889.
They further allege that the Gulf, Mobile and Ohio Railroad Company claims ownership of said property and particularly the east half of the north half of the south half of Square 83, pursuant to a deed from one Henry Albert to New Orleans Great Northern Railroad Company by a deed dated April 12, 1907 and recorded in Conveyance Book 47, folio 524. They allege that the said Henry Albert did not own the property conveyed in the said deed and the claim of ownership of the defendant through said title is unwarranted and unjust.
Plaintiffs pray that they be recognized as the true and lawful owners of said property, and for costs.
By supplemental and amended petition the defendant New Orleans Great Northern Railway Company as the successor to the New Orleans Great Northern Railroad Company was made a party defendant.
The New Orleans Great Northern Railway Company filed an answer to the supplemental and amended petition in which they *408 deny that the plaintiff has any title to the property and that they have had long- and uninterrupted possession for a period approximating fifty-seven years, through its predecessor New Orleans Great Northern Railroad Company, itself and its lessees Gulf, Mobile and Ohio Railroad Company, which possession was in good faith, and accompanied by regular continued use. They pray that they be recognized as the lawful owner of the property subject to the rights of the Gulf, Mobile and Ohio Railroad Company as a present lessee. The Gulf Mobile and Ohio Railroad Company filed a similar answer and prayed for the same relief. By a supplemental and amended answer the New Orleans Great Northern Railway Company plead the prescription of over thirty years provided by Article 3499 and ten years provided by Article 3478 RSA-CC and further alleging that they claim ownership of the “southeast quarter of Square 83,” pursuant to the deed by which they originally acquired it. The Gulf, Mobile and Ohio Railroad Company filed a similar supplemental and amended answer.
The case was duly tried and the Lower Court with written reasons assigned rendered judgment in favor of the New Orleans Great Northern Railway Company and against the plaintiff decreeing the New Orleans Great Northern Railway Company to be the lawful owner of the subject property, but subject to the rights of the Gulf, Mobile and Ohio Railroad Company under the lease covering the said property, and assessing costs against the plaintiffs. Judgment was duly signed and from this judgment the plaintiffs have brought this appeal.
Plaintiff Mrs. Emily H. Wilson testified that they lived out of the State in Jackson, Mississippi. She generally handled the affairs of the inheritance which the plaintiffs received from their father, .and that she went to Mandeville quite often and viewed the subject property. However, she did not know exactly where the line was dividing the north from the south half of the said southeast quarter.
Plaintiffs placed on the Stand one Robert Berlin, a registered Surveyor, who identified a map which was placed in evidence. According to this map the south half of the south half of said Square 83 is not in dispute. This is admitted by counsel for the plaintiffs. There is a shading of a right angle piece shaded in red which extends from south of the line dividing the north and south half and with its widest portion on the east boundary of said square and angling down until it reaches the dividing line between the north and south half of the said southeast quarter of the square 83. This is supposed to represent a clear place north of the railroad track which the railroad has admittedly kept clean from underbrush and trees so that they can observe cows or anything that would interfere with the operation of the road.
Plaintiffs offered the original deeds with leave to file photostatic copies or certified copies of them setting forth the chain of title as alleged in the petition. They also produced tax receipts showing payment of taxes due to the Parish of St. Tammany and to the Town of Mandeville.
Plaintiffs also placed on the Stand Mr. Ernest Prieto a licensed Realtor of Mande-ville who testified that he had the property listed for sale and that he assumed that the Hansbroughs owned it. He knew that it was north of the railroad and that it was impossible to discern without a survey just where the half line of the property of the railroad company stopped and the property of the Hansbroughs started.
Defendants placed on the Stand Mr. Maurice F. Wilhelm who is a lawyer licensed in the State of Missouri but who has been handling land and tax matters for the defendants. Mr. Wilhelm testified positively that in its return to the Public Service Commission and particularly since the New Orleans Great Northern Railway Company acquired the property that the southeast quarter of Square 83 of the *409 Town of Mandeville was shown on their returns. However, the assessment was made up of so many miles, or feet of track and right of way which he states covers the land in question. There does not seem to be any dispute about this part of it but plaintiffs state there is nothing on the assessment rolls to show that Square 83 is included in this description.
They also placed on the Stand Mr. O. V. Planche, Mr. Jack Welch, Mr. J. I. Smith and Mr. Troy Phillips. Mr. Planche testified that he had been a railroad engineer for over fifty-five years and that he had driven his engines or operated the trains over this Square 83 ever since the railroad was built, in fact, he claimed to have operated the first train that went over it. Mr. Welch testified that he was a bralceman, conductor and train master for the railroad company and started working for the railroad company in August of 1908, and had continued working until he retired, except for one year when he was out of service in 1911. He testified also that the line was built and that it had operated in the same location ever since he started working for the company.
Mr. J. I. Smith testified that he had worked for defendant ever since 1912 and on the same line covering the subject property since 1929. He had supervision of the maintenance of the railroad and that it had always been in the same place as when originally constructed.
Mr. Phillips testified that he had been track foreman over the entire branch line, running from above Covington to north Slidell, and that the line ran through the subject property. He was familiar with the railroad and had been in active charge of the maintenance work on the right of way for the past twenty-four years.
Defendants also placed on the Stand Ches Mizell who testified that he had been working as a claims agent for the G. M. and O. Railroad Company Louisiana Division since February 1, 1937 and that he had never heard of any adverse claims, nor had there been any adverse claims presented to him concerning the railroad’s ownership of the southeast quarter of Square 83 of the Town of Mandeville.
The description in the deed by which the New Orleans and Great Northern Railroad Company acquired the property of Henry Albert reads as follows, to-wit:
“One quarter square 253 feet in width (being 253 feet on east side of the center line of the railroad track) over, upon and across the following described lands in the Parish of St. Tammany, Town of Mondeville, to-wit:
One quarter of Square 83, said quarter forms a corner of Villere and Colbert Street and measures 253 feet on Villere Street by a depth of 253 feet between parallel lines.”
According to the map offered in evidence Square 83 is a regular square of the Town of Mandeville, measuring 506 feet 20 inches north and south 532 feet 5 inches east and west, and bounded north by Montgomery Street, east by Colbert Street, south by Villere Street, and west by Albert Street.
Plaintiffs appellants claim that the nature of the act claimed by the defendants constituted adverse corporal possession on a portion of the contended property but does not show possession of subject property and particularly is this true as regards to the adverse corporal possession required by Article 3500 of the Louisiana Revised Civil Code.
There is no doubt but what the railroad company kept the trees cut and the right of way cleared some distance north of the railroad track, their end getting smaller as time went by. Plowever, what appellants overlooked is the fact that the railroad company had possession of the south half of the southeast quarter which is included in their deed. The description of 253 feet square at the southeast corner of this square takes up the whole southeast quarter.
*410 The possession of the railroad company of this south half is admitted, and their title is unquestioned by the appellants. Therefore, when you tack on the little portion north of the half quarter square line shaded in pink on the map to that portion of the southeast quarter, the south half thereof on which possession is admitted you have possession of most of the southeast quarter under a title translative of the whole. We, therefore, fail to find any merit to this argument.
Plaintiffs appellants next urge that the deed under which defendant claims to initiate the possession of ten years in good faith and under color of title is not in fact translative of title, the description of the land therein being too vague to definitely describe the object of the sale.
They cite several cases in support of their contention, and while we agree with the law as set forth within these cases we fail to see where they apply to the case at Bar.
There is no question but what the deed calls for a quarter of Square 83 measuring 253 feet on Villere Street by a depth of 253 feet between parallel lines, which would place it in the corner of Villere and Colbert Streets. We do not see the necessity of resorting to extraneous evidence to explain or make more definite the descriptions in this deed. While the description is not as well drawn as it could be we still think that it is sufficient to describe the southeast quarter of Square 83, which is the property claimed by the defendant.
Plaintiffs appellants next claim that possession of the part implying possession of the whole as a doctrine interpreting Article 3487 is not applicable to the present case. They rely mainly on the case of Quaker Realty Company, Ltd. v. Maury, 5 Orleans App. 67, and very courteously copied the decision in toto in this case, the pertinent part of which is as follows:
“The plaintiff in this petitory action acquired the property in controversy from the daughter and heir of one Thieneman, who purchased from M. H. Breen in 1855, and who had his title duly registered.
The defendant claims ownership-through mesne conveyance from Breen in 1858; he also sets up two tax titles from the State; the evidence shows-.him to be without title.
When Breen sold in 1858 he had already parted with title in 1855, and' the tax titles evidently refer to some other property which they respectively described as fronting on Mandeville-Street, or on Spain Street, whereas-the property now in dispute fronts on. Johnson Street.
The defendant also urges the prescription of ten years based on possession-under a title in good faith, and the-plea is based on the alleged fact that, the property was fenced in about twenty years ago, when it was leased by Miss Heron, the warrantor, and that: the fence has since been maintained.
A perusal of the mass of testimony-taken on this point satisfactorily shows-that there was a fence put around other-property, and that the one in controversy, instead of being fenced in, was-in reality fenced out. While it is true,, as a general proposition, that possession of a part of a continuous tract of land is possession of the whole, we do-not consider that the doctrine is applicable to city lots divided according to-a plan.
These, though of common ownership, must be regarded as distinct and specific entities.
The plaintiff’s title must, therefore, be held good, and we now pass to the question of the value of the improvements put upon the place by the defendant.”
A reading of this decision shows that it does not apply to the facts in this case. *411 Plaintiffs appellant next claim that to fulfill the indicia of possession required by Article 3487 possession must be public. The possessor must act without hiding himself and generally do as those do who make use of the right. His possession will be clandestined when hidden from those who are interested in knowing them. Further, the acts of possession must be not only open and corporal they must also be civil in nature. The evidence in this case indicates that the actions of the defendants are none of these things and therefore their claim under possession must fail.
Appellants rely on Article 3487 which reads as follows:
“To enable one to plead the prescription treated of in this paragraph, it is necessary that the possession be distinguished by the following incidents:
1. That the possessor shall have held the thing in fact and in right, as owner; when, however, it is only necessary to complete a possession already begun, the civil possession shall ■suffice, provided it has been preceded by the corporal possession.
2. That the possession shall have been continuous and uninterrupted, peaceable, public and unequivocal; a ■clandestine possession would give no right to prescribe; but he who possesses by virtue of a title can not be considered as a clandestine possessor, for his title leads to the supposition that the possession commenced in good faith, and that is sufficient to enable him to plead prescription.”
Appellants then go into figures and compute the proportion of the contended property on which the railroad has encroached, which is a very small percentage. However, they ignore the fact that the railroad company had possession of the south half of the southeast quarter in addition to this portion of the north half of the southeast quarter, and the two must be taken together. Therefore, applying this doctrine to this case the defendant definitely had possession, and exercised possession over most of the southeast quarter of said Square 83.
LSAtC.C. 3437 reads as follows:
“It is not necessary, however, that a person wishing to take possession of an estate to pass over every part of it; it is sufficient if he enters on and occupies a part of the land, provided it be with the intention of possession of all that is included within the boundaries.”
Plaintiffs in their brief cite the case of Ellington v. Ellis & Dorset, 2 La.App. 715 and Nixon et al. v. English, 207 La. 906, 22 So.2d 266. These cases do show that cutting of timber on a small portion of land on two occasions where there were no marked boundary lines and no evidence to show that any one went on the land involved could know with any degree of certainty that he was on this land or land adjacent to it. We believe that the case of Smith v. Southern Kraft Corporation, 202 La. 1019, 13 So.2d 335 (1943) is determinative of this issue. This is a Supreme Court case which involved a huge tract of land totaling thousands of acres, originally owned by the Standard Lumber Company. The lumber company sold a 20 acre parcel to one Smith in 1903. Smith never took any possession of this parcel, never paid the taxes on it, and neither he nor his heirs ever asserted any legal claim to it until after oil was discovered there. Three years after transferring the parcel to Smith, Standard Lumber Company executed a quit claim deed to Louisiana Central Lumber Company, covering thousands of acres of land, including the disputed 20 acres. At this time most of the land had no value. The 20 acre parcel was part of a 260 acre tract and in order to establish possession of the 20 acre parcel Louisiana Central or its successors had to establish some physical possession of the 260 acre tract. The evidence showed that in 1916 a tram railroad 8 or 10 miles in *412 length was built by this company and that it traversed the 260 acre tract, although it was about one quarter mile away from the disputed 20 acres. Log trains were operated daily over this track for the next eight years. Another tram road was built in 1923 and also passed over this large tract. Neither of these roads actually passed over the 20 acre parcel. There was some occasional removal of timber from the 260 acre tract which was the only possession established, and it did not physically bear upon the 20 acre parcel. The Supreme Court held that this was a sufficient possession as contemplated by Articles 3437 and 3498.
Applying this to the case at Bar the quarter of a square which the railroad company claimed was 253 feet north and south by 253 feet east and west and over the South portion of the same, the south half there is no dispute about their possession. The logic of the Smith case applied to the case at Bar definitely shows that the possession was sufficient to establish prescription. Prescription as set forth in Article LSA-C.C. 3479 reads as follows:
“To acquire the ownership of im-movables by the species of prescription which forms the subject of the present paragraph, four conditions must concur:
1. Good faith on the part of the possessor.
2. A title which shall be legal, and sufficient to transfer the property.
3. Possession during the time required by law, which possession must be accompanied by the incidents hereafter required.
4. And finally an object which may be acquired by prescription.”
We are satisfied that there was good faith on the part of the possessor. Plaintiffs urge that the defendant, a railroad company, did not have an abstract of title and opinion prepared by a lawyer before they purchased this property. While that would be the best thing to have done we know of no law which requires this. The railroad did not see fit to do so and they have not lost any rights as a result thereof.
We have held that a title which shall be legal and sufficient to transfer the property was vested in the railroad company by the virtue of their deed set out heretofore. This meets the second requirement.
There is no question but what the railroad has had possession for the required length of time. The appellants admit their possession of the south half, the title to it being good, and the only portion they are concerned with is that portion of the north half of the southeast quarter of said Square 83. That possession of the southeast quarter dates from 1908 when they constructed the railroad across the south half of said southeast quarter and cleared the land north of the railroad which extended over into the north half of said southeast quarter. The appellants do not dispute this possession but try to limit it only to the north half of the southeast quarter which we have heretofore set out that they could not do.
There is no question but what appellants’ chain of titles goes back to 1889 ante dating both the title and possession of the defendant. However, the case of Smith v. Southern Kraft, supra, holds as follows:
“Under the jurisprudence of this state, the prescription of ten years aquirenda causa may be invoked although at the date of purchase there stood registered on the conveyance records a deed evidencing a prior sale of the land to another.”' Wells v. Goss, 110 La. 347, 34 So. 470.
For these reasons we are of the opinion that the judgment of the Lower Court is correct, and accordingly the judgment of the Trial Court is affirmed.
Affirmed.