KNOLL, Judge.
The sole issue on appeal is the use of a writ of mandamus by appellees, Hogan Exploration, Inc., John J. Saye, Christie lies Saye, Erwin Saye, Nan Dobson Saye, John J. McKeithen, Marjorie Funderburk McKeithen, Robert F. Meredith, III, Cary-lyn Hancock Meredith, Richard Keller, Ann Dunn Keller, Thomas L. Gibbs, Pamela Thomas Gibbs, Troy J. Cox, Marlin Exploration, Inc., Alton H. Howard and Mamie Meador Howard to compel Placid Oil Company to pay a sum of money for oil purchased when a serious dispute as to title of the minerals was not resolved. We reverse.
Placid filed a motion for summary judgment contending that Hogan’s mandamus proceeding was an inappropriate vehicle to resolve the issue because of the title controversy. The trial court denied the motion. The matter was tried resulting in judgment in favor of Hogan, et al., in the sum of $178,598.33 plus legal interest from date of judicial demand, and attorney fees of $9,000.00.
Hogan Exploration, Inc., (hereinafter referred to as Hogan) was the agent and operator for the mineral lessees. Hogan drilled the McMurry # 2 well, affecting the mineral interests in the NWVi of SEVi of Section 28, T8N-R3E, LaSalle Parish, Louisiana. Placid Oil Company (hereinafter referred to as Placid) contends it owns the mineral interest in McMurry # 2 well, as per a mineral deed covering the same property.
Placid’s title to the disputed mineral interests is a mineral deed dated October 11, 1979, filed in the public records of LaSalle Parish on October 18, 1979. The deed conveys all the mineral rights using the following description:
“Township 8 North, Range 3 East, Section 28 NW/4 of SE/4 less portion of which timber has been deadened and in cultivation, as reserved in acts of sale from Funny Louis Lumber Company of May 13, 1911 — 25.00.”
The trial court held this mineral deed void as to third persons, therefore it could not be relied upon as a basis for consideration of the last record owner document. The following expression by the court in State ex rel. Boykin v. Hope Manufacturing Company, 167 So. 506 (La.App. 2nd Cir.1936), summarizes a misapplication of the mandamus *548 provision as in the case at bar, under the last record owner statute:
“Mandamus is an extraordinary remedy and resort to it to collect or enforce unliq-uidated obligations was never intended nor admitted. It is admitted when there is no adequate remedy at law and where ' the issue is free from doubt.

... any law designed to transform the functions of the writ of mandamus into an agency for the enforcement of disputed rights and obligations, for the solution of which necessarily there must be a trial, as in ordinary cases, should be free of doubt of such purpose and be so clear that judicial interpretation would be unnecessary to ascertain its meaning.” (emphasis added)
See also Levy v. Billeaud, 399 So.2d 775 (La.App. 3rd Cir.1981); Scott v. Hunt Oil Co., 219 So.2d 779 (La.App. 2nd Cir.1969); and State Democratic Comm. v. Sinagra, 79 So.2d 94 (La.App. 1st Cir.1955).
The use of an extraordinary proceeding, in this case a writ of mandamus, is not sanctioned by law when the law provides relief by ordinary means. LSA-C. C.P. Art. 3862:
“A writ of mandamus may be issued in all cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice; ...”
We are not expressing an opinion regarding the title dispute. However, it is necessary to outline the factual existence of the two chains of title for the rationale of our findings.
The first chain affected the NWVi of the SEVi and emanated from a deed Dennis Rozier executed to August Mann. Funny Louis Lumber Company, predecessor in title to Bodcaw Company, subsequently acquired the August Mann interest. On October 11, 1979, Placid purchased by quit claim mineral deed the minerals in the NWVi of the SEVi from Bodcaw.
A second chain of title arose by Dennis Rozier conveying portions of the NWVi of the SEVi in 1910 to the ancestors of title to Mr. and Mrs. Wayne P. McMurry, Mr. and Mrs. Vernon Hawthorne and Mr. and Mrs. Arthur Farrel Mitchell.
The Honorable Jimmie Dean, Tax Assessor for LaSalle Parish, testified that the land owners were individually assessed taxes on the disputed quarter-quarter section, and, Bodcaw and its predecessors in title, from whom Placid’s mineral title is derived, had been paying taxes on twenty-five acres of the same disputed quarter-quarter section since 1912.
On September 2, 1981, (prior to Hogan’s drilling) Hogan attempted to obtain a quit claim deed from Placid. Being unsuccessful Hogan then attempted to obtain an oil and gas lease of Placid’s interests, which Placid refused. Following these negotiations, Hogan’s president, Robert F. Meredith, III, stated at trial that a second opinion was obtained. Discussing the results of the second opinion, he testified:
“They had, they had a chain of title which indicated that they had a claim to it. We had a chain of title which indicated that we had a claim to it. Our attorneys investigated it thoroughly and decided that our claim was superior to theirs.” (emphasis added)
Acting on their own “opinion” rather than properly litigating the disputed title in an ordinary proceeding, Hogan commenced drilling the McMurry # 2 well.
There are two separate and distinct chains of title shown in the records of La-Salle Parish affecting the disputed forty acres. Both chains arose from a common ancestor in title, Dennis Rozier:
(1) In 1903 to August Mann which contained a clause in the property description, specifically excepting those parts of the land on which timber had been deadened, and, which was in cultivation. This description was repeated through the years. In 1979, Placid purchased the mineral rights affecting the NWVi of the SEVi by a mineral deed from Bodcaw, which is the last instrument emanating from the 1903 transaction;
*549 (2) In 1910 when he conveyed portions of the disputed area to the ancestors in title of appellees.
Placid’s 1979 mineral deed is the most recent recorded transaction affecting title to the property with the exception of a 1981 sale of one acre in the NWVi of the SEVi to the McMurrys. LSA-R.S. 31:210 and 211 provide:

Article 210

“A purchaser of minerals produced from a recorded lease granted by the last record owner holding under an instrument translative of title to the land or mineral rights leased is fully protected in making payment to any party in interest under the lease unless and until a suit is filed testing title to the land or mineral rights embraced in the lease and the purchaser receives notification of it by registered mail....”

Article 211

“A purchaser of production under Article 210 ... may be compelled by writ of mandamus issued by a court of competent jurisdiction to pay sums due for production purchased by him.”
Boykin, supra, and its progeny are in accord with the Louisiana Mineral Code. We therefore follow the Mineral Code and jurisprudence accordingly.
Hogan’s attorney, Mr. Jim Peters, advised it as early as September 2, 1981, that there “are two separate and distinct chains of title”, and, by letter dated September 23, 1981, specifically acknowledged to Placid that a title defect existed. Notwithstanding Placid’s refusal to quit claim to Hogan or grant a mineral lease to Hogan, and, Hogan’s knowledge of Placid’s claim to the mineral interest in the disputed tract, Hogan commenced drilling in November of 1981, acting at its own peril.
Following the completion of the McMurry # 2 well, Mr. Robert F. Meredith, III, Hogan’s President, telephoned Placid’s office in Dallas, Texas. He discussed with Mr. Jim Swan, Placid’s crude oil representative, arrangements for Placid to commence purchasing the oil. This conversation took place in late November, 1981. Placid received the oil for the first two weeks in December, 1981. Disbursing of the revenue in accordance with the ownership of the producing property is the responsibility of Placid’s division order department.
Approximately a week after the conversation, Mr. Swan discovered Placid’s claim to the minerals in the forty acres. He requested Placid’s land department to make further investigation. Placid, through its attorney, Mr. Joseph Wilson, advised Hogan, by letter dated December 22, 1981:
“As the attorney for Placid Oil Company, I have been asked to advise you that Placid has and will continue to purchase the crude oil with the following understanding:
(1) Placid will purchase subject to its customary requirement of title examination and' compliance with the attorney’s requirements disclosed by such examination.
(2) The purchase of Placid, while the question of ownership is determined in the proper forum, is not an admission of the validity of the claim of any party asserting possession adversely to Placid.
I would ask that you acknowledge that the purchase by Placid will not be asserted by you either as a waiver of any right with respect to our claim of mineral ownership or as a basis for estoppel or laches in any ensuing litigation. Conversely, I am authorized to state that Placid Oil Company will not consider any course of conduct followed by your company in this regard as a basis for waiver, estoppel or laches.”
Hogan did not respond to the above letter.
Placid continued to take delivery of the oil produced from the McMurry # 2 well until March, 1982, when Hogan notified Placid’s field people to stop receiving the oil. Hogan then sold the oil to another purchaser.
On the basis of Placid’s title opinion, it made payment of the uncontested portion in the sum of $95,712.87 on May 4, 1982. Regarding the disputed twenty-five acres, Placid has held these funds in suspense.
*550 Judicial determination is needed to ascertain the mineral interests of the litigants. A serious dispute presently exists over the ownership of the minerals. To use the mandamus proceeding to resolve this dispute “would be an innovation in the legal history of the State and a potential instrument of far-reaching mischief.” Boykin, supra.
The exclusion of warranty rights from a deed does not invalidate it as a conveyance. “... It has been uniformly held that a quit claim deed, wherein property is conveyed without warranty of title, may be the basis of the ten year acquisitive prescription.” Smith v. Southern Kraft Corporation, 202 La. 1019, 13 So.2d 335 (1943).
Since we find Placid to be the last record owner, the appellees have failed to meet the conditions precedent to a proper application of the protective provisions of LSA-R.S. 31:210 and 211. State ex rel Boykin, supra; and State ex rel. Muslow v. Louisiana Oil Refining Corporation, 176 So. 686 (La.App. 2nd Cir.1937).
We hold the trial court could not resolve the title question, but only determine the propriety of the writ of mandamus. Title must be litigated precedent to the filing of a mandamus action. The trial court therefore committed error in failing' to sustain defendant’s motion for summary judgment. The judgment of the trial court is reversed, assessing costs of this appeal to the appellees.
REVERSED.
STOKER, J., concurs and assigns written reasons.
YELVERTON, J., concurs for the reasons assigned by STOKER, J.